IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

IDEAL INSTRUMENTS, INC., a
Michigan corporation,

        Plaintiff,

vs.

RIVARD INSTRUMENTS, INC., a
foreign corporation, and MERIL
RIVARD, a foreign national,

        Defendants.

No. C 05-3079-MWB

MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION TO
DISMISS AND PLAINTIFF'S
MOTION FOR DEFAULT
JUDGMENT

_____

TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   A. Background And Allegations Of The Complaint . . . . . . . . . . . . . . . . 3
   B. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. THE DEFENDANTS' MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . 9
   A. Personal Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      1. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . 9
      2. Applicable standards . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      3. Application of the standards . . . . . . . . . . . . . . . . . . . . . . 17
         a. The "purposefully directed" factor . . . . . . . . . . . . . 17
         b. The "claim arising from contacts" factor . . . . . . . . . 23
         c. The "reasonable and fair" factor . . . . . . . . . . . . . . 24
      4. Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
   B. Failure To State Claims Upon Which Relief Can Be Granted . . . . . . . 26
      1. Arguments of the parties . . . . . . . . . . . . . . . . . . . . . . . . 26
      2. Applicable standards . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      3.       *Application of the standards* . . . . . . . . . . . . . . . . . . . . . . 31
             a.     *The infringement claim* . . . . . . . . . . . . . . . . . . . . . 31
             b.     *The defamation and disparagement claims* . . . . . . . . 36
                  i.     *The "corporate defamation" claim* . . . . . . . . 38
                  ii.    *The "product disparagement/trade libel"*
                       *claim* . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
             c.     *The tortious interference claims* . . . . . . . . . . . . . . . 43
  C.  *Jurisdiction Over The Foreign Patent Claim* . . . . . . . . . . . . . . . . . . . 46
      1.       *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . 46
      2.       *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
             a.     *Application of existing precedent* . . . . . . . . . . . . . . 48
             b.     *Ideal's "wait and see" argument* . . . . . . . . . . . . . . . 52
  D.  *Forum Non Conveniens* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56
      1.       *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . . . 56
      2.       *Applicable standards* . . . . . . . . . . . . . . . . . . . . . . . . . 57
      3.       *Weighing of the factors* . . . . . . . . . . . . . . . . . . . . . . . 59
             a.     *"Private interest" factors* . . . . . . . . . . . . . . . . . . . . 59
             b.     *"Public interest" factors* . . . . . . . . . . . . . . . . . . . . . 61

III.  *THE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT* . . . . . . . . . 63
  A.  *Arguments Of The Parties* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
  B.  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64
      1.       *The language of Rule 12(a)* . . . . . . . . . . . . . . . . . . . . . 64
      2.       *The interpretation on which Ideal relies* . . . . . . . . . . . . . 65
      3.       *The interpretation by the majority of courts* . . . . . . . . . . . 66
      4.       *This court's interpretation* . . . . . . . . . . . . . . . . . . . . . . 68

IV.  *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

The defendants in this action assert fairly comprehensive challenges to the plaintiff's claims of infringement by the defendants of the plaintiff's United States patent, non-infringement by the plaintiff of the defendants' Canadian patent, and various commercial torts. One theme running through the parties' arguments on the defendants' motion to dismiss is whether the claims presented—with the exception of the claim that the corporate defendant is infringing the plaintiff's United States patent—should be litigated in this forum or in a pre-existing lawsuit brought by the corporate defendant in the Federal Court of Canada.

## I. INTRODUCTION

### A. Background And Allegations Of The Complaint

Plaintiff Ideal Instruments, Inc., is a Michigan corporation with its principal place of business in Lansing, Michigan. In its Complaint, Ideal alleges that defendant Rivard Instruments, Inc., is a closely held for profit Canadian corporation and that defendant Meril Rivard, who is a citizen of Canada and resident of Winnipeg, Manitoba, is the president and majority, if not sole, shareholder of Rivard Instruments. Both Ideal and Rivard Instruments manufacture "detectable" hypodermic needles for use, for example, in hypodermic syringes for livestock. The needles are "detectable" in the sense that they are made to be easily detected in the carcasses of slaughtered animals, if they break off or are otherwise inadvertently left behind. Neither Ideal nor Rivard Instruments has any manufacturing or distribution facilities or corporate offices in Iowa. Ideal nevertheless argues that Iowa is a center of the dispute between the parties, because it is a center of the livestock industry in which both parties' products are used.

More specifically, Ideal is the assignee of United States Patent No. 6,488,668 (the '668 patent) for a "detectable heavy duty needle." The '668 patent issued on December

3, 2002, and was upheld on *ex parte* reexamination on December 23, 2004. However, the focus of this litigation is another, subsequent patent for a "detectable heavy duty needle," for which Ideal is also the assignee, United States Patent No. 6,960,196 (the '196 patent), which issued on November 1, 2005. The Abstract for the '196 patent describes the patented invention as follows:

> The present invention provides a detectable heavy duty needle cannula for use in hypodermic syringes and the like. Needle cannula comprises a magnetizable or magnetized stainless steel alloy, which enables needle cannula to be detectable in metal detectors that are commonly used in the meat processing industry to detect broken needle cannulas in the flesh of slaughtered animals.

Complaint, Exhibit A (the '196 patent) (component numbers deleted). Ideal manufactures, sells, and distributes a product exploiting the inventions disclosed in the '668 and the '196 patents under the commercial name "D3 Detectable Needles."

Similarly, Rivard Instruments owns Canadian Patent No. 2,298,277 (the '277 patent), which submissions by the defendants reveal is a patent for "detectable stainless steel needles for meat packing," issued March 16, 2004. *See* Defendants' Motion to dismiss (docket no. 13), Exhibit 1, attachment to Affidavit Exhibit 1A (the '277 patent). The Abstract for the '277 patent describes the patented invention as follows:

> Magnetic stainless steel needles are detectable in processed meat. The previous non magnetic versions, made of 304 stainless steel, are not. Disposable hypodermic needles made from martensitic and ferritic stainless steel are easily detectable at the smallest size. A method of detection is also disclosed.

The '277 patent. Rivard Instruments also makes products exploiting the '277 patent.

Ideal contends that Rivard Instruments has made, used, offered for sale, sold, and/or caused to be sold, and has shipped, and/or caused to be shipped, in or into this

federal judicial district, and elsewhere in the United States, detectable, magnetic, stainless steel veterinary hypodermic needles that read on and infringe Ideal's '196 patent and the invention claimed therein. Ideal also contends that Meril Rivard has directed and/or caused the infringing detectable, magnetic, stainless steel veterinary hypodermic needles to be made, used, offered for sale, sold, and/or shipped into this federal judicial district and elsewhere in the United States. Ideal contends, further, that Meril Rivard and Rivard Instruments have themselves or through their agents published to third parties, including existing and prospective customers, distributors, and/or manufacturers, accusations that Ideal has infringed Rivard Instruments's '277 patent and that Ideal's D3 Detectable Needles are of inferior quality. Finally, Ideal alleges that, in December 2005, Meril Rivard made an unannounced and unwelcome visit to the facility where Ideal's D3 Detectable Needles are made[1] and, while there, attempted to obtain confidential and proprietary information, attempted to interfere with the business relationship between Ideal and its manufacturer, made false and disparaging statements of and concerning Ideal, and attempted to intimidate Ideal's manufacturer by threatening to return with lawyers.

### B. Procedural Background

In its Complaint in this action, filed December 30, 2005, Ideal asserts several patent and commercial tort claims. More specifically, in Count 1, Ideal asserts a claim of "patent infringement," alleging infringement by Rivard Instruments and indirect infringement[2] by

---

[1] Ideal does not allege in its Complaint where its manufacturing facility is located, but admits in its briefing of the defendants' motion to dismiss that the manufacturing facility in question is in China.

[2] In its brief in opposition to the defendants' motion to dismiss, Ideal describes its
(continued...)

Meril Rivard of Ideal's '196 patent. In Count II, Ideal asserts a claim for "declaratory judgment," seeking a declaration that Ideal is not infringing Rivard Instruments's '277 patent. In Count III, Ideal asserts a claim of "corporate defamation," alleging that the defendants have made false and defamatory statements to third parties of and concerning Ideal to the effect that Ideal's D3 Detectable Needles infringe Rivard Instruments's '277 patent. In Count IV, Ideal asserts a claim of "product disparagement/trade libel," alleging that the defendants have made false and derogatory statements of and concerning the quality of Ideal's D3 Detectable Needles. In Count V, Ideal asserts a claim of "tortious interference with advantageous business relationships and expectancies," alleging that the defendants have intentionally and falsely accused Ideal of infringing Rivard Instruments's '277 patent and that the defendants have falsely informed existing and prospective customers and distributors that, if they purchase or use Ideal's D3 Detectable Needles, they will infringe the '277 patent and may be sued. Finally, in Count VI, Ideal asserts another claim of "tortious interference with advantageous business relationship or expectancies," this time alleging that the defendants have interfered with the relationship between Ideal and its manufacturer by making false and disparaging statements concerning Ideal and attempting to intimidate the manufacturer by threatening to return to its facility with lawyers.

---

[2](…continued)
patent infringement claim against Meril Rivard as "contributory infringement." *See, e.g.,* Plaintiff Ideal's Brief In Opposition To Defendants' Motion To Dismiss (docket no. 22), 9. As the court will explain in more detail *infra*, beginning on page 31, what Ideal has labeled a claim for "contributory infringement" is more properly described as a claim for "indirect infringement" or "inducement of infringement" pursuant to 35 U.S.C. § 271(b), which provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."

This is not, however, the first lawsuit between the parties arising from their dispute over their detectable needle products and patents. Rather, on June 8, 2004, Rivard Instruments filed an action in the Federal Court of Canada in which it alleges that Ideal is infringing Rivard Instruments's '277 patent. Rivard Instruments also asserts that Ideal has asserted in the Canadian action the non-infringement defense that is embodied in Ideal's declaratory judgment claim in Count II of the present action. Also, at some time in 2005, Ideal brought an action against Rivard Instruments in the United States District Court for the Western District of Michigan alleging the same patent and commercial tort claims that it now asserts in this action, but Ideal subsequently voluntarily dismissed that action. Ideal contends that it dismissed the Michigan action after Rivard Instruments asserted that it was not subject to personal jurisdiction in Michigan, but conceded that it did have direct contacts with California and Iowa.

The defendants have not answered Ideal's Complaint in this action. Instead, on February 14, 2006, the defendants moved to dismiss all or most of the claims in Ideal's Complaint on several grounds. *See* docket no. 13. Specifically, Meril Rivard seeks dismissal of all claims against him for lack of personal jurisdiction, failure to state claims upon which relief can be granted, and *forum non conveniens*. Meril Rivard also seeks dismissal of Count II, the count seeking declaratory judgment that Ideal is not infringing Rivard Instruments's Canadian patent, the '277 patent, on the grounds of lack of subject matter jurisdiction, international comity, and abuse of process. Rivard Instruments joins in Meril Rivard's arguments for dismissal of Count II on the grounds of lack of subject matter jurisdiction, international comity, and abuse of process, his arguments for dismissal of Counts II through VI for *forum non conveniens*, and his arguments for dismissal of Counts III through VI for failure to state claims upon which relief can be granted. However, Rivard Instruments does not challenge, at least at this time, Ideal's claim of

infringement of Ideal's United States patent, the '196 patent, in Count I. Thus, the defendants' motion to dismiss, if granted in its entirety, would leave only Count I against only defendant Rivard Instruments before this court. Ideal resisted the defendants' motion to dismiss on all grounds on March 14, 2006, and the defendants filed a reply in further support of their motion on March 22, 2006. The parties submitted various documents and exhibits in support of and resistance to the defendants' motion to dismiss, but they assert that the court may properly consider these documents and exhibits as matters of public record or as information pertinent to a facial challenge to personal jurisdiction.

On April 11, 2006, Ideal filed its Combined Motion And Brief For Default Judgment Against Defendant Rivard Instruments, Inc., As To Count I Of The Complaint (docket no. 30). In its motion, Ideal seeks entry of default and default judgment against Rivard Instruments for failing to answer Count I of the Complaint, to which Rivard Instruments had made no challenge in its motion to dismiss. In the alternative, Ideal seeks partial summary judgment on that Count, or an order directing Rivard Instruments to file an immediate answer to it. Rivard Instruments resisted Ideal's motion for default judgment on April 24, 2006 (docket no. 33).

The defendants requested oral arguments on their motion to dismiss, and the court considered it likely that such oral arguments would be of benefit. Therefore, by order dated April 18, 2006 (docket no. 31), the court set the defendants' motion to dismiss for oral arguments on May 3, 2006. Although no party requested oral arguments on Ideal's motion for default judgment, after receiving the defendants' response to that motion, the court deemed it appropriate to hear oral arguments on that motion as well. Therefore, by order dated April 24, 2006 (docket no. 34), the court advised the parties that it would also hear oral arguments on Ideal's motion for default judgment in conjunction with the oral arguments on the defendants' motion to dismiss.

At the oral arguments on May 3, 2006, plaintiff Ideal Instruments, Inc., was represented by Mark R. Fox of Fraser Trebilcock Davis & Dunlap, P.C., in Lansing, Michigan, who argued the motions, and by local counsel Jay Eaton of Nyemaster, Goode, West, Hansell & O'Brien, P.C., in Des Moines, Iowa. Defendants Rivard Instruments and Meril Rivard were represented by and James W. Hellwege of Birch, Stewart, Kolasch & Birch, L.L.P., of Falls Church, Virginia, who argued the motion, and Angela E. Dralle of Dorsey & Witney, L.L.P., in Des Moines, Iowa. Also monitoring the arguments was Susan Steppanich, who was identified by Mr. Hellwege as house counsel for Rivard Instruments. At the conclusion of the oral arguments, the defendants' motion to dismiss and the plaintiff's motion for default judgment were deemed fully submitted.

## II. THE DEFENDANTS' MOTION TO DISMISS

### A. Personal Jurisdiction

Individual defendant Meril Rivard contends that all claims against him should be dismissed for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. If the court lacks personal jurisdiction over Meril Rivard, then it need not reach any of Meril Rivard's other challenges to the patent and commercial tort claims against him.

### 1. Arguments of the parties

Meril Rivard contends that Ideal has failed to make even a *prima facie* showing of personal jurisdiction over him, because he does not have sufficient minimum contacts with this forum to support the exercise of either "general" or "specific" personal jurisdiction. He contends that his contacts with Iowa are truly "minimal." More specifically, he asserts that he has only visited Iowa twice to attend industry-sponsored meetings relating to the pork industry, the "World Pork Expo" in Des Moines in June 2004 and "Needle

9

Summit II" in Des Moines in December 2004. He points out that he has no office or residence in Iowa, has never lived in Iowa, owns no property in Iowa, pays no taxes in or to Iowa, maintains no telephone listing in Iowa, does not maintain a residence or even a postal address in Iowa, maintains no bank account in Iowa, has no employees in Iowa, and has not previously sued or been sued in Iowa.

Meril Rivard also points out that Ideal's Complaint does not allege that any of the actions purportedly giving rise to Ideal's claims occurred in Iowa—indeed, he points out that the Complaint does not identify *any* location where any of the alleged events occurred. Thus, he contends that there is no nexus at all between any of his alleged actions and this forum. Instead, he contends that, if there is any location with a nexus to the claims, that location is in Canada or China, where the alleged acts and statements would actually have occurred.

Meril Rivard contends, further, that Iowa not only has no nexus to the claims, but that Iowa has no interest in providing a forum for a dispute between a Michigan plaintiff and Canadian defendants with respect to conduct that occurred outside of Iowa. On a related issue, failure to state claims upon which relief can be granted, Meril Rivard makes an argument also relevant to personal jurisdiction, which is that Ideal has not asserted any basis for piercing the corporate veil, which might make any and all contacts that Rivard Instruments may have had with this forum attributable to him, as well. Finally, he contends that Iowa is an inconvenient forum for the parties and witnesses involved in this litigation. Thus, he contends that the exercise of personal jurisdiction over him does not comport with due process.

Ideal vehemently disagrees. Indeed, Ideal asserts that there can be no genuine dispute that the exercise of either "general" or "specific" personal jurisdiction over Meril Rivard would comport with due process, because in Ideal's view, Meril Rivard has

continuous and systematic contacts with this forum that are closely associated with the causes of action at issue. Moreover, if there is any doubt on the question, Ideal contends that it should be allowed to conduct initial discovery limited to personal jurisdiction (and possibly venue) issues. More specifically, Ideal asserts that Meril Rivard is not immune from Iowa jurisdiction based on his status as an "employee" of Rivard Instruments and that there is no need to resort to "alter ego" or "piercing the veil" theories to obtain jurisdiction over him. Rather, Ideal contends that the Eighth Circuit Court of Appeals has recognized that corporate contacts with a forum may be attributable to an individual, even in the absence of "alter ego" or "piercing the veil" theories, where, for example, the individual defendant made numerous telephone calls on behalf of the corporation into the forum or made visits to the forum to conduct corporate business and derived personal profit from those activities. Here, Ideal contends that "it is similarly obvious that Defendant Rivard has personally maintained continuous and systematic contacts with customers and distributor(s) in the State of Iowa, has purposefully availed himself of opportunities in the Iowa livestock industry, has derived personal profit as a result of doing business in Iowa and is, thus, subject to personal jurisdiction in this forum." Ideal's Brief In Opposition To Defendants' Motion To Dismiss (docket no. 20), 9. Ideal also contends that Meril Rivard is a "contributory infringer," so that his direction of infringing acts that occurred in this forum is sufficient basis for personal jurisdiction over him in this forum.

Turning to the effects of Meril Rivard's contacts with this forum, Ideal contends that Meril Rivard has had continuous and systematic contacts with this forum, such that "general" jurisdiction can be exercised over him, because he and his company do extensive business in Iowa, and they maintain a business relationship with an independent distributor in Iowa. Ideal contends that it "appears that Defendant Rivard has personal communications with the Iowa distributor regarding sales and disbursement of Defendant

[Rivard Instruments's] products," that Rivard and his company employ a salesman to travel to the United States, and that this salesman "[m]ost presumably" has conducted business on behalf of the defendants in Iowa. *Id.* at 11. In support of its contention that this court has at least "specific" jurisdiction over Meril Rivard, Ideal asserts that Meril Rivard's tortious activities have had a harmful effect on Ideal within the livestock industry in the State of Iowa. Ideal contends that Meril Rivard's "contributory infringement," in particular, provides a strong basis for the exercise of personal jurisdiction over him, because the effects of that conduct have been felt daily in Iowa, the seat of the industry in which both parties market and distribute their products and where the acts of infringement occurred and are occurring.

Finally, Ideal contends that Iowa is an interested and convenient forum. Ideal contends that Meril Rivard and his company have purposefully directed their activities at this forum and its livestock industry and that this litigation results from the alleged injuries arising out of or relating to those activities. Ideal contends that Meril Rivard's complaints about the inconvenience of this forum are neither compelling nor credible, because only Meril Rivard himself is likely to be required to travel to Iowa, and then only for trial; other discovery can be conducted in Canada. Ideal contends that this forum is equally convenient to *both* parties and more convenient to most of the material witnesses and to Ideal than the defendants' chosen forum in Winnipeg, Manitoba.

In reply, Meril Rivard points to the lack of factual support for Ideal's allegations, which Ideal has attempted to mask by using phrases like "apparently," "similarly obvious," "most presumably," and the like, while failing to cite to any facts in the record. The truth, Meril Rivard contends, is that he simply does not have sufficient contacts with this forum to support either "general" or "specific" jurisdiction. He contends that Ideal's reliance on "the effects test" for evaluating contacts with the forum is misplaced, because

in each case where "the effects test" was found to warrant personal jurisdiction over the defendant, the plaintiff was a resident of the forum state, which is not the situation here. Meril Rivard also contends that jurisdiction over a parent corporation does not automatically establish jurisdiction over an employee or out-of-state agent. Here, Meril Rivard contends that no wrongdoing was directed at Iowa residents, the plaintiff is not an Iowa resident, and the "brunt of the injury," if any, occurred in Canada or China where sales occurred and alleged statements were made.

### 2.    Applicable standards

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides for a pre-answer motion to dismiss for "lack of jurisdiction over the person" of the defendant. FED. R. CIV. P. 12(b)(2). Both the Eighth Circuit Court of Appeals and the Federal Circuit Court of Appeals, which has exclusive appellate jurisdiction in patent cases, 28 U.S.C. § 1295(a)(1), recognize that, in response to a Rule 12(b)(2) challenge, the party asserting personal jurisdiction only has the burden of establishing a *prima facie* case. *See, e.g., Johnson v. Woodcock*, ___ F.3d ___, ___, 2006 WL 925427, *1 (8th Cir. April 11, 2006) ("The party asserting personal jurisdiction has the burden of establishing a prima facie case."); *Romak USA, Inc. v. Rich*, 384 F.3d 979, 983 (8th Cir. 2004) ("'[T]o defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction[,]' and may do so by affidavits, exhibits, or other evidence.") (quoting *Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003)); *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005) (where "there has not been discovery on the jurisdictional issue, [the plaintiff] is required 'only to make a prima facie showing' of jurisdiction to defeat the motion to dismiss") (quoting *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003), in turn quoting *Deprenyl Animal Health, Inc. v. University of Toronto*

*Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002)). Moreover, "[i]n evaluating this showing, the district court must construe all pleadings and affidavits in the light most favorable to the plaintiff." *Trintec Indus., Inc.*, 395 F.3d at 1282-83; *accord Romak USA, Inc.*, 384 F.3d at 983 ("[W]e must view the evidence in the light most favorable to [the plaintiff] and resolve factual conflicts in its favor. . . .").

The Federal Circuit Court of Appeals applies its own law, not that of the regional circuit, to issues of personal jurisdiction in a patent infringement case. *Rates Tech., Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1307 (Fed. Cir. 2005) (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998)); *Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 1111 (2004). The principle of critical importance here, where both patent infringement claims and state-law claims are asserted, is that if the court has personal jurisdiction over a defendant as to a patent claim, then the court also has personal jurisdiction over that defendant as to state-law claims, provided that there is supplemental subject matter jurisdiction over those state-law claims pursuant to 28 U.S.C. § 1367. *Electronics For Imaging, Inc.*, 340 F.3d at 1348 n.1 (citing *Silent Drive, Inc.*, 326 F.3d at 1206; *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1377-78 (Fed. Cir. 1998); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1362-63 (Fed. Cir. 2001); and 13 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3523.1 (2002)). Thus, consideration of Federal Circuit standards for personal jurisdiction in a patent case will be dispositive of the issue of the court's personal jurisdiction over individual defendant Meril Rivard as to all claims against him, including non-patent claims.[3]

---

[3]Somewhat strangely, in this case involving, first and foremost, claims of infringement and indirect infringement of patents, the parties have cast their arguments in

(continued...)

As the Federal Circuit Court of Appeals has explained,

> The determination whether a district court has personal jurisdiction over the defendants in a patent infringement case generally involves two inquiries. First, does jurisdiction exist under the state long-arm statute? *See, e.g., Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003); *Deprenyl Animal Health, Inc. v. U. of Toronto Innovations*, 297 F.3d 1343, 1349-50 (Fed. Cir. 2002); *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002); *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001). Second, if such jurisdiction exists, would its exercise be consistent with the limitations of the due process clause? *See, e.g., Silent Drive*, 326 F.3d at 1201; *Inamed*, 249 F.3d at 1359-60.
>
> Sometimes these two inquiries coalesce into one because the reach of the state long-arm statute is the same as the limits of the due process clause, so that the state limitation 'collapses into' the due process requirement. *Inamed*, 249 F.3d at 1360 (noting that California long-arm statute is coextensive with limits of due process); *see also Deprenyl*, 297 F.3d at 1350 (same, discussing Kansas long-arm statute); *HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999) (same, discussing Nebraska long-arm statute).

*Trintec Indus., Inc.*, 395 F.3d at 1279. As this court has noted on a number of occasions, Iowa is such a state in which the reach of the state's long-arm statute "collapses into" the due process inquiry. *See, e.g., Remmes v. International Flavors & Fragrances, Inc.*, 389 F. Supp. 2d 1080, 1091 (N.D. Iowa 2005) (citing *Bell Paper Box, Inc. v. U.S. Kids, Inc.*,

---

[3] (…continued)
terms of Eighth Circuit standards for personal jurisdiction in non-patent cases, instead of in terms of Federal Circuit standards for personal jurisdiction in patent infringement cases and cases involving patent infringement claims and supplemental state-law claims. This court, however, will apply the appropriate Federal Circuit standards.

22 F.3d 816, 818 (8th Cir. 1994)); *Med-Tec Iowa, Inc. v. Computerized Imaging Reference Sys., Inc.*, 223 F. Supp. 2d 1034, 1036 (N.D. Iowa 2002); *Waitt v. Speed Control, Inc.*, 212 F. Supp. 2d 950, 955 (N.D. Iowa 2002); *Pure Fishing, Inc. v. Silver Star Co., Ltd.*, 202 F. Supp. 2d 905, 915 (N.D. Iowa 2002). Thus, the question here is whether personal jurisdiction over Meril Rivard comports with due process. *Trintec Indus., Inc.*, 395 F.3d at 1279.

Two kinds of personal jurisdiction satisfy due process, "specific" and "general" jurisdiction. *Id.* "'Specific jurisdiction "arises out of" or "relates to" the cause of action even if those contacts are "isolated and sporadic." . . . General jurisdiction arises when a defendant maintains "continuous and systematic" contacts with the forum state even when the cause of action has no relation to those contacts.'" *Id.* (quoting *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000), in turn quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985), and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)); *accord Epps*, 327 F.3d at 648 (Eighth Circuit case also citing *Helicopteros Nacionales de Columbia*, 466 U.S. at 414, for the distinctions between "general" and "specific" jurisdiction).

The Federal Circuit Court of Appeals has adopted a three-factor test of "specific" jurisdiction for purposes of a patent case, which requires consideration of the following: (1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the claim arises out of or relates to the defendant's activities with the forum state; and (3) whether assertion of personal jurisdiction is reasonable and fair. *Electronics For Imaging, Inc.*, 340 F.3d at 1350.[4] This court will call these factors, respectively, the

---

[4]The Eighth Circuit Court of Appeals has established a similar five-factor test to determine the sufficiency of the defendant's contacts for purposes of personal jurisdiction,

(continued...)

"purposefully directed" factor, the "claim arising from contacts" factor, and the "reasonable and fair" factor. As the Federal Circuit Court of Appeals has explained, "The first two factors correspond to the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor with the 'fair play and substantial justice' prong." *Id.* (referring to the seminal Supreme Court case on personal jurisdiction, *International Shoe v. Washington*, 326 U.S. 310 (1945)). The court will consider each of these factors in turn.

      3.    *Application of the standards*

           a.    *The "purposefully directed" factor*

Meril Rivard contends that he did not direct any of his individual activities at this forum. However, Ideal contends that Meril Rivard aimed his company's allegedly infringing products at Iowa, as a center of the livestock industry, through a distributor in Iowa, and that Meril Rivard is liable for "contributory" infringement, because he personally directed and/or caused the infringing products to be used, offered for sale, sold,

---

[4](…continued)
which considers the following: (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties. *Epps*, 327 F.3d at 648 (citing *Burlington Industries, Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996), in turn citing *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983)). Under this test, the first three factors are the most important, *id.*, while the third factor determines whether "specific" or "general" jurisdiction is applicable. *See Guinness Import Co. v. Mark VII Distributors, Inc.*, 153 F.3d 607, 614 (8th Cir. 1998). Again, although the parties have cast their arguments primarily in terms of satisfaction of this five-factor test, the court finds Federal Circuit standards for personal jurisdiction in patent cases to be applicable here.

and/or shipped into Iowa. Ideal contends that these actions are sufficient basis for personal jurisdiction over Meril Rivard.

As the court understands Ideal's argument, Ideal is asserting essentially a "stream of commerce" theory of personal jurisdiction over Meril Rivard. The Federal Circuit Court of Appeals has explained that there is a split in the United States Supreme Court on the question of whether or not merely placing a product into the stream of commerce, such that it reaches the forum state, satisfies the "purposefully directed" factor. *See Commissariat a L'Energie Atomique*, 395 F.3d at 1321 (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102 (1987), for the split). As the Federal Circuit Court of Appeals explained, in *Asahi*,

> On the question of minimum contacts, Justice O'Connor, writing for four members of the Court, urged that more than a "mere act of placing the product into the stream [of commerce]" is required, and that due process also demands "an act of the defendant purposefully directed toward the forum State." [*Asahi*, 480 U.S. at] 112, 107 S. Ct. 1026. Justice Brennan's position, adopted by three others, was that such "additional conduct" is not needed when the defendant places goods in a stream of commerce defined as "the regular and anticipated flow of products from manufacture to distribution to retail sale." *Id.* at 117, 107 S. Ct. 1026.

*Commissariat a L'Energie Atomique*, 395 F.3d at 1321. In *Commissariat a L'Energie Atomique*, the Federal Circuit Court of Appeals concluded that the evidence showed that the established distribution channels for the defendant's component created a "regular and anticipated" flow of the product into the state of Delaware and more than "unpredictable currents or eddies," thus "likely satisfying Justice Brennan's version of the stream of commerce theory." *Id.* at 1321-22. However, the court found that evidence had not yet been presented that would satisfy Justice O'Connor's standard for "'[a]dditional conduct

of the defendant [to] indicate an intent or purpose to serve the market in the forum State, [such as] . . . advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum state.'" *Id.* at 1322 (quoting *Asahi*, 480 U.S. at 112). This was true, in part, because it was unclear to what extent the scope of Delaware's long-arm statute accords with the scope of the due process clause, and more specifically, which version of the "stream of commerce" theory Delaware would adopt under its statute. *Id.* Therefore, the court declined to decide on the record then before it whether or not additional evidence, as described by Justice O'Connor, was required to satisfy Delaware law and due process, and remanded for further discovery. *Id.* at 1322-24.

This case presents a somewhat different situation, but one that makes the decision in *Commissariat a L'Energie Atomique* no less instructive. First, there is no doubt that the scope of Iowa's long-arm statute is co-extensive with the scope of the due process clause. *See, e.g., Remmes*, 389 F. Supp. 2d at 1091 (citing *Bell Paper Box, Inc.*, 22 F.3d at 818). Thus, if due process is satisfied, the requirements of the Iowa long-arm statute are also satisfied. *Compare Commissariat a L'Energie Atomique*, 395 F.3d at 1322 (it was not clear whether the scope of the Delaware long-arm statute was the same as the scope of due process). Furthermore, satisfaction of Justice O'Connor's narrower interpretation of the scope of due process will doubtless satisfy the requirements of both the Iowa long-arm statute and due process.

As in *Commissariat a L'Energie Atomique*, this court finds that Ideal has made at least a *prima facie* showing that the defendants' launch of an allegedly infringing product into the "stream of commerce" that leads to Iowa would satisfy Justice Brennan's broader formulation of the doctrine. More specifically, Ideal has made at least a *prima facie*

showing—based on the defendants' admission that Rivard Instruments has a non-exclusive distributor *in Iowa* and the fact that Iowa is a key livestock-raising state in which the defendants' products are used—that the established distribution channels for the defendants' allegedly infringing product created a "regular and anticipated" flow of the product into the state of Iowa and more than "unpredictable currents or eddies," thus "likely satisfying Justice Brennan's version of the stream of commerce theory." *Cf. Commissariat a L'Energie Atomique*, 395 F.3d at 1321-22 (finding that the defendant's distribution channels created such a "regular and anticipated flow, that was more than "unpredictable currents or eddies," that would carry the defendants' products into Delaware, thus satisfying Justice Brennan's formulation). In contrast to the situation in *Commissariat a L'Energie Atomique*, however, this court also finds that Ideal has made at least a *prima facie* showing that it can satisfy Justice O'Connor's standard, which requires a showing of "'[a]dditional conduct of the defendant [to] indicate an intent or purpose to serve the market in the forum State.'" *Compare id.* (finding no sufficient showing to satisfy Justice O'Connor's formulation). Ideal has done so here by pointing to evidence that the defendants are "'marketing the[ir] product through a distributor who has agreed to serve as the sales agent in the forum state.'" *See id.* at 1322 (quoting *Asahi*, 480 U.S. at 112). Thus, if Meril Rivard is responsible for establishing the distribution network for the defendants' allegedly infringing product in Iowa, due process is satisfied by his launch of allegedly infringing products into the "stream of commerce" leading to Iowa, and he is a defendant over whom this court may properly exercise personal jurisdiction. *Cf. id.* (noting that such evidence would be sufficient to satisfy Justice O'Connor's formulation, but not finding such evidence in the case before it).

The more complicated question here, however, is exactly how much of the conduct of establishing the distribution network for the defendants' allegedly infringing product in

Iowa *is attributable to individual defendant Meril Rivard*, because the court must consider its personal jurisdiction over each defendant separately, where the defendants are a corporation and a corporate officer. *See, e.g., 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998) (considering separately whether the court had personal jurisdiction over a corporation and the corporation's president and CEO). Ideal alleges that Meril Rivard directed the infringing activity by Rivard Instruments and that, in addition, he made two trips to Iowa to attend livestock industry related seminars, that it is "obvious" or "apparent" that Meril Rivard has personally maintained contacts with customers and Rivard Instruments's distributor in the State of Iowa, that he has purposefully availed himself of opportunities in the Iowa livestock industry, and that he has derived personal profit as a result of doing business in Iowa, all of which establish that his individual contacts with and purposeful direction of activities at this forum are sufficient to establish personal jurisdiction over him in this forum. Meril Rivard contends that Ideal is relying entirely on speculation about his conduct and that, in any event, his conduct as alleged consisted of nothing more than acting in his role as a corporate officer.

In *3D Systems*, the Federal Circuit Court of Appeals found that the court did not have personal jurisdiction over the president and CEO of the defendant corporation, even though it did have personal jurisdiction over the corporation, because all of the corporate officer's actions in relation to the forum state were taken in his role as an officer of the corporation; there was no showing that he had, individually, purposefully directed his activities toward the residents of the forum state. *Id.* The court found, further, that there was no adequate basis for disregarding corporate forms or piercing the corporate veil to attribute to the individual officer any of the conduct of the corporation. *Id.* at 1380-81.

Meril Rivard contends that the same situation obtains here, but Ideal contends that it has alleged sufficient individual conduct by Meril Rivard to reach a different result. The

court agrees with Meril Rivard that allegations that he attended two seminars in Iowa, which he admits, and allegations that he contacted customers and distributors, or even allegations that he personally profited from Rivard Instruments's conduct in this state—for which there is at present no evidence in the record, only speculation—do not suffice to show anything but actions taken by Meril Rivard in his role as an employee or officer of Rivard Instruments, and as such, those allegations are insufficient to show that he, individually, purposefully directed his activities toward the residents of this state. *Id.*

On the other hand, Ideal also points to its allegations of what it calls "contributory" infringement by Meril Rivard in Iowa as establishing his "purposeful direction" of activities toward this forum or contacts with this forum, so that piercing the corporate veil is irrelevant. *Compare id.* (where the plaintiff alleged only activities by an officer of the corporation in his role as an officer, and no basis for piercing the corporate veil, there were no contacts attributable to the officer). As the court will explain more fully, *infra*, beginning on page 31, the court finds that what Ideal has labeled a claim for "contributory infringement" is more properly described as a claim for "indirect infringement" or "inducement of infringement" pursuant to 35 U.S.C. § 271(b). Nevertheless, where "indirect infringement" or "inducement of infringement" involves the defendant's own actions in directing or encouraging infringement by another in a particular forum, *see, e.g., MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (identifying the elements of a claim of inducement of infringement), it follows that the inducer has directed his activities at the forum just as certainly as the infringer has. Here, Ideal alleges more than just that Meril Rivard effectuated infringing activities by Rivard Instruments in this forum. *Compare 3D Sys., Inc.,* 160 F.3d at 1380 (where all of the corporate officer's actions in relation to the forum state were taken in his role as an officer of the corporation, there was no showing that he had, individually,

purposefully directed his activities toward the residents of the forum state).  Rather, Ideal alleges that Meril Rivard, the inducer, directed Rivard Instruments, the direct infringer, to establish the distribution channels for Rivard Instruments's allegedly infringing product that created a "regular and anticipated" flow of the product into the state of Iowa and more than "unpredictable currents or eddies," and caused, directed, or induced "'[a]dditional conduct of the defendant [that] indicate[s] an intent or purpose to serve the market in the forum State,'" such as directing the "'marketing [of] the [infringing] product through a distributor who has agreed to serve as the sales agent in the forum state.'"  *See Commissariat a L'Energie Atomique*, 395 F.3d at 1322 (quoting *Asahi*, 480 U.S. at 112). Thus, as alleged, Meril Rivard's own actions would satisfy both Justice Brennan's and Justice O'Connor's formulations of a "stream of commerce" theory of personal jurisdiction. *Id.*

Thus, if Ideal has, indeed, stated a claim for "indirect infringement" or "inducement of infringement" against Meril Rivard upon which relief can be granted, then it would follow that the possibility of his distinct liability for such infringement does make the possibility of his being summoned for judgment in this forum sufficiently foreseeable for this court to exercise personal jurisdiction over him.  For the reasons stated *infra*, beginning at page 31, the court finds that Ideal has stated a claim for "indirect infringement" or "inducement of infringement" upon which relief can be granted. Therefore, Ideal has satisfied the first factor in the personal jurisdiction inquiry.

b.    The "claim arising from contacts" factor

The court turns, next, to consideration of the second factor in the personal jurisdiction inquiry, which is whether the patent claim arises out of or relates to the defendant's activities within the forum state.  *Electronics For Imaging, Inc.*, 340 F.3d at 1350.  The analysis of this factor can be comparatively brief, because it is "clear that the

tortious injury caused by patent infringement occurs within the state where the allegedly infringing sales are made." *Commissariat a L'Energie Atomique*, 395 F.3d at 1318 (citing *North Am. Phillips Corp.*, 35 F.3d at 1579; and *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994)). Thus, it follows that, if allegedly infringing sales were made in Iowa, then the tortious injury underlying the patent infringement claims occurred within this forum and arose from the contacts of the individual defendant with this forum, all or many of which consisted precisely of "indirect infringement" or "inducement of infringement." Therefore, this factor is also satisfied as to Meril Rivard, where the court finds, *infra*, that Ideal has stated a claim of "indirect infringement" or "inducement of infringement" by Meril Rivard resulting in allegedly infringing sales in Iowa.

        *c.*     *The "reasonable and fair" factor*

The final factor in the analysis of personal jurisdiction in patent cases is whether assertion of personal jurisdiction is "reasonable and fair." *See Electronics For Imaging, Inc.*, 340 F.3d at 1350 (setting out the three-factor test). As the Federal Circuit Court of Appeals has explained,

> Once the plaintiff has shown that there are sufficient minimum contacts to satisfy due process, it becomes defendants' burden to present a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S. Ct. 2174. The reasonableness inquiry encompasses factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Inamed*, 249 F.3d at

1363, (citing *Asahi Metal Indus. Co. v.Super. Ct. of Cal.*, 480
U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)).

*Electronics For Imaging, Inc.*, 340 F.3d at 1351-52.

Meril Rivard contends that litigating in this forum is unduly burdensome on him; that Iowa has no interest in this litigation, which involves out-of-state parties and out-of-state activity; that the issues are already joined in Canadian Federal Court; and that only the Canadian Federal Court has jurisdiction over the infringement issues concerning the '277 patent. Ideal counters that litigating in this forum is not unduly burdensome on Meril Rivard, or at least no more burdensome on him than litigating in Winnipeg, Manitoba, is on Ideal; that Iowa has an interest in protecting its livestock industry and those persons pursuing that business from products that infringe valid patents for products related to that industry; and that the Canadian court does not already have jurisdiction or exclusive jurisdiction over the claims that Ideal is asserting.

The court finds that the defendants' assertion of *forum non conveniens* subsumes most of the pertinent factors at issue on this prong of the personal jurisdiction analysis. The court will consider in detail the *forum non conveniens* issue below, beginning at page 56. Suffice it to say here that, upon due consideration of the pertinent factors, the court cannot find that Meril Rivard has met his burden to present a "'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Electronics For Imaging, Inc.*, 340 F.3d at 1351-52 (quoting *Burger King*, 471 U.S. at 477). Therefore, this factor also does not weigh against the court's exercise of personal jurisdiction over individual defendant Meril Rivard.

4.    *Summary*

Upon consideration of the pertinent factors, *see id.* at 1350 (stating the three-factor inquiry to determine whether a court has "specific" personal jurisdiction over a defendant

in a patent case), the court finds that it can properly exercise "specific" personal jurisdiction over individual defendant Meril Rivard for "indirect infringement" or "inducement of infringement" of Ideal's United States patent. Because the court has personal jurisdiction over Meril Rivard for the patent claim, it also has personal jurisdiction over him for supplemental state-law claims over which this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1367. *Id.* at 1348 n.1. Therefore, that portion of the defendants' motion to dismiss seeking dismissal of all claims against individual defendant Meril Rivard for lack of personal jurisdiction will be denied.

### B. *Failure To State Claims Upon Which Relief Can Be Granted*

Individual defendant Meril Rivard attacks all claims against him pursuant to Rule 12(b)(6) for failure to state claims upon which relief can be granted, and corporate defendant Rivard Instruments asserts the same ground for dismissal of Counts III through VI. As mentioned above, the personal jurisdiction determination is also dependent upon whether Ideal has stated a claim of "indirect infringement" or "inducement of infringement" of Ideal's United States patent against Meril Rivard upon which relief can be granted.

### 1. *Arguments of the parties*

In support of the portion of his motion to dismiss asserting failure to state claims upon which relief can be granted, individual defendant Meril Rivard contends, first, that there are no facts alleged to support cognizable claims against him either personally or under an alter ego theory, based on his status as the president and majority shareholder of Rivard Instruments, where all of the individual conduct alleged actually involves no more than conduct in his role as an officer and employee of the corporate defendant, Rivard Instruments. Indeed, Meril Rivard contends that there is no allegation whatsoever in

Ideal's Complaint of an alter ego theory or other theory for piercing the corporate veil, so as to attribute liability to him individually. He also argues that applicable Canadian corporate law would not allow piercing the corporate veil in the circumstances alleged here. Finally, he contends that none of the allegedly defamatory or injurious statements attributed to him in support of Counts III through VI are actionable, because all are statements of opinion rather than fact. Rivard Instruments's argument in support of dismissal of Counts III through VI for failure to state claims against it upon which relief can be granted are essentially the same as Meril Rivard's last argument in support of dismissal of these Counts pursuant to Rule 12(b)(6): If Ideal could prove that any of the allegedly damaging statements were made, which the defendants dispute, those statements were non-actionable opinions.

In response, Ideal asserts that "alter ego" and "piercing the corporate veil" theories are simply irrelevant here, where Ideal has alleged Meril Rivard's own wrongdoing, including what it calls "contributory" infringement. Specifically, Ideal contends that each of its claims against Meril Rivard is an intentional tort based on Meril Rivard's personal conduct, and as such, Meril Rivard cannot hide behind a corporate shield. Moreover, Ideal contends that it has alleged an adequate basis for finding that the statements upon which the claims in Counts III through VI are based are actionable, false statements of fact, not merely statements of opinions.

### 2. Applicable standards

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a pre-answer motion to dismiss on the ground that the Complaint "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The Federal Circuit Court of Appeals has explained that, even in a patent case, "[a] motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent

law, to which this court applies the rule of the regional circuit." *Showmaker v. Advanta USA, Inc.*, 411 F.3d 1366, 1367-68 (Fed. Cir. 2005) (citing *C & F Packing Co., Inc. v. IBP, Inc.*, 224 F.3d 1296, 1306 (Fed. Cir. 2000)). Thus, this court's familiar Eighth Circuit standards apply to this portion of Meril Rivard's motion to dismiss.

The issue on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is not whether a plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence in support of his or her claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *United States v. Aceto Agric. Chem. Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations.[5] *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Gross v. Weber*, 186 F.3d

---

[5]On a motion to dismiss pursuant to Rule 12(b)(6), the court ordinarily cannot consider matters outside of the pleadings, unless the court converts the Rule 12(b)(6) motion into a motion for summary judgment pursuant to Rule 56. *See* FED. R. CIV. P. 12(b)(6); *see also Buck v. F.D.I.C.*, 75 F.3d 1285, 1288 & n. 3 (8th Cir. 1996). However, on a motion to dismiss, the court may consider certain matters outside of the pleadings without converting the motion into a motion for summary judgment. For example, the court may consider documents outside of the pleadings where "the plaintiffs' claims are based solely on the interpretation of the documents [submitted] and the parties do not dispute the actual contents of the documents." *Jenisio v. Ozark Airlines, Inc., Retirement Plan*, 187 F.3d 970, 972 n. 3 (8th Cir. 1999) (citing *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997)). The court may also take judicial notice of public records, such as the docket and pleadings of pending judicial proceedings, pursuant to Rule 201 of the Federal Rules of Evidence. *See also Cinel v. Connick*, 15 F.3d 1338, 1343 n. 6 (5th Cir. 1994) (holding that, "[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record"); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991) (similar holding); *cf. Florida State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 663 (8th Cir. 2001) (taking judicial notice of SEC filings in deciding a Rule 12(b)(6) motion to dismiss); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th
(continued...)

1089, 1090 (8th Cir. 1999) ("On a motion to dismiss, we review the district court's decision de novo, accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]."); *St. Croix Waterway Ass'n v. Meyer*, 178 F.3d 515, 519 (8th Cir. 1999) ("We take the well-pleaded allegations in the complaint as true and view the complaint, and all reasonable inferences arising therefrom, in the light most favorable to the plaintiff."); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999) (same); *Midwestern Machinery, Inc. v. Northwest Airlines*, 167 F.3d 439, 441 (8th Cir. 1999) (same); *Wisdom v. First Midwest Bank*, 167 F.3d 402, 405 (8th Cir. 1999) (same); *Duffy v. Landberg*, 133 F.3d 1120, 1122 (8th Cir.) (same), *cert. denied*, 525 U.S. 821 (1998); *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997) (same); *WMX Techs., Inc. v. Gasconade County, Mo.*, 105 F.3d 1195, 1198 (8th Cir. 1997) (same); *First Commercial Trust v. Colt's Mfg. Co.*, 77 F.3d 1081, 1083 (8th Cir. 1996) (same).

The court is mindful that, in treating the factual allegations of a complaint as true pursuant to Rule 12(b)(6), the court must "reject conclusory allegations of law and unwarranted inferences." *Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) (citing *In re Syntex Corp. Securities Lit.*, 95 F.3d 922, 926 (9th Cir. 1996)); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) (the court "do[es] not, however,

---

[5](…continued)

Cir. 1999) (same); *United States v. Doyle*, 121 F.3d 1078, 1088 (7th Cir. 1997) (taking judicial notice of district court's docket sheet). The court finds that, while documents of various sorts have been attached to the parties' briefs in support of and resistance to the defendants' motion to dismiss, those documents either do not pertain to the Rule 12(b)(6) portion of the defendants' motion to dismiss, or are of a kind that the court can properly consider without converting the Rule 12(b)(6) portion of the motion into a motion for summary judgment.

blindly accept the legal conclusions drawn by the pleader from the facts," citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1357, at 595-97 (1969)); *see also LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1103 (6th Cir. 1995) (the court "need not accept as true legal conclusions or unwarranted factual inferences," quoting *Morgan*, 829 F.2d at 12). Conclusory allegations need not and will not be taken as true; rather, the court will consider whether the *facts* alleged in the plaintiffs' complaint, accepted as true, are sufficient to state a claim upon which relief can be granted. *Silver*, 105 F.3d at 397; *Westcott*, 901 F.2d at 1488.

The United States Supreme Court and the Eighth Circuit Court of Appeals have both observed that "a court should grant the motion and dismiss the action 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *accord Conley*, 355 U.S. at 45-46 ("A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief."); *Meyer*, 178 F.3d at 519 ("The question before the district court, and this court on appeal, is whether the plaintiff can prove any set of facts which would entitle the plaintiff to relief" and "[t]he complaint should be dismissed 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations,'" quoting *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)); *Gordon*, 168 F.3d at 1113 ("We will not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would demonstrate an entitlement to relief."); *Midwestern Machinery, Inc.*, 167 F.3d at 441 (same); *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th

Cir. 1998) (same); *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997) (same); *Doe*, 107 F.3d at 1304 (same); *WMX Techs., Inc.*, 105 F.3d at 1198 (same). Rule 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Thus, "[a] motion to dismiss [pursuant to Rule 12(b)(6)] should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Frey*, 44 F.3d at 671 (internal quotation marks and ellipses omitted); *accord Parnes*, 122 F.3d at 546 (also considering whether there is an "insuperable bar to relief" on the claim).

The court will apply these standards to that portion of the defendants' motion to dismiss seeking dismissal of all claims against Meril Rivard and the claims in Counts III through VI against Rivard Instruments for failure to state claims upon which relief can be granted.

### 3. Application of the standards

#### a. The infringement claim

Meril Rivard seeks dismissal of Count 1 for failure to state a patent infringement claim against him. Ideal has characterized its patent infringement claim against Meril Rivard as a claim of "contributory infringement," citing *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544 (4th Cir. 2004), which in turn cites *Gershwin Publ. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971). However, *CoStar Group* and *Gershwin Publishing* are both *copyright* infringement cases, *see CoStar Group, Inc.*, 373 F.3d at 550 (discussing "contributory infringement" of a copyright); *Gershwin Publ. Corp.*, 443 F.2d at 1162 (same), not *patent* infringement cases like the one now before the court. Moreover, the Federal Circuit Court of Appeals, not the Fourth (or the Second) Circuit Court of Appeals, states governing law in patent infringement cases. *See* 28

31

U.S.C. § 1295(a)(1) (the Federal Circuit Court of Appeals has exclusive jurisdiction over appeals in patent cases).[6] Thus, *CoStar Group* and *Gershwin Publishing* are inapposite here.

What the Federal Circuit Court of Appeals describes as a claim for "contributory infringement" of a *patent* is authorized by 35 U.S.C. § 271(c). *See, e.g., Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (citing § 271(c) as defining "contributory infringement" of a patent). That statutory provision imposes liability for "contributory infringement" as follows:

> (c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). As the Federal Circuit Court of Appeals has explained, "In order to succeed on a claim of contributory infringement, in addition to proving an act of direct infringement, plaintiff must show that defendant 'knew that the combination for which its components were especially made was both patented and infringing' and that defendant's components have 'no substantial non-infringing uses.'" *Cross Med. Prods., Inc.*, 424

_____

[6] Although "[a] motion to dismiss for failure to state a claim upon which relief can be granted is a purely procedural question not pertaining to patent law, to which [the Federal Circuit Court of Appeals] applies the rule of the regional circuit," *Showmaker*, 411 F.3d at 1367-68, for a patent claim, the Federal Circuit Court of Appeals still states the *substantive* law applicable to the claim, so that this court must consider whether the elements of a patent claim, as defined by Federal Circuit law, have been adequately pleaded.

F.3d at 1312 (quoting *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004), with internal quotations omitted).  In this case, there are no allegations that individual defendant Meril Rivard sells or offers to sell a "component" especially made for use in a patented and infringing product or that such a component has no substantial non-infringing uses.  *See id.*; 35 U.S.C. § 271(c).  Instead, Ideal alleges that Meril Rivard directed or caused Rivard Instruments to infringe Ideal's '196 patent.  Thus, Ideal plainly does not state a claim for "contributory infringement" of a patent within the meaning of § 271(c).

Nevertheless, Ideal's allegations that Meril Rivard directed or caused Rivard Instruments to infringe Ideal's '196 patent may be cognizable as a patent infringement claim, but one described as "indirect infringement," and more specifically, as "inducement of infringement," rather than "contributory infringement."  Section 271(b) provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b); *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1318 (Fed. Cir. 2003) ("The Patent Act imposes indirect infringement liability on a party who actively induces others to directly infringe a patent.") (citing 35 U.S.C. § 271(b)), *cert. denied*, 540 U.S. 982 (2003).  "'In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement,' and 'second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement.'"  *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (quoting *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002)); *accord Cross Med. Prods., Inc.*, 424 F.3d at 1312 (quoting *MEMC*).

The defendants do not challenge the sufficiency of Ideal's allegations concerning the first element of Ideal's "inducement of infringement" claim, that there has been direct

infringement by Rivard Instruments of Ideal's '196 patent. *Id.* ("In order to succeed on a claim of inducement, the patentee must show, first that there has been direct infringement.") (internal quotation marks omitted). Moreover, the court agrees that, taking Ideal's factual allegations concerning infringement of the '196 patent by Rivard Instruments as true, *see Conley*, 355 U.S. at 45-46, Ideal has alleged direct infringement by Rivard Instruments that would satisfy the first element of an "inducement of infringement" claim.

The court, therefore, turns to the sufficiency of Ideal's allegations concerning the second element of a claim of inducement of infringement, "that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *MEMC Elec. Materials, Inc.*, 420 F.3d at 1378 (internal quotation marks omitted). "'While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.'" *Id.* (quoting *Water Techs. Corp v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988)); *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."). The Federal Circuit Court of Appeals has acknowledged "that 'there is a lack of clarity concerning whether the required intent must be merely to induce the specific acts [of infringement] or additionally to cause an infringement.'" *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1365 n.4 (*comparing Manville Sales Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) ("The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements." (emphasis in original)), *with Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990) ("[P]roof of actual intent to cause the acts which constitute the infringement is a necessary prerequisite to finding active inducement.")). Despite this admitted lack of

clarity, the Federal Circuit Court of Appeals has held that there is sufficient inference of "intent" to satisfy either standard where the defendant had notice of the plaintiff's patent and provided another with directions to perform specific acts leading to infringement. *Id.* Thus, "'the only intent required of [defendant] is the intent to cause the acts that constitute infringement.'" *Id.* at 1364; *MEMC Elec. Materials, Inc.*, 420 F.3d at 1378 n.4 (where the defendant "had the intent to induce the specific acts constituting infringement, intent additionally to cause an infringement can be presumed").

In the present case, the court finds that Ideal has adequately alleged "that [Meril Rivard] knowingly induced infringement and possessed specific intent to encourage [Rivard Instruments's] infringement." *MEMC Elec. Materials, Inc.*, 420 F.3d at 1378 (internal quotation marks omitted). The Complaint alleges that Meril Rivard had notice of Ideal's '196 patent and provided Rivard Instruments with directions to perform specific acts leading to infringement. *Golden Blount, Inc.*, 438 F.3d at 1365 n.4 (recognizing the sufficiency of such evidence to prove "intent"). Specifically, Ideal alleges that Meril Rivard did not merely effectuate infringing activities by Rivard Instruments, *compare 3D Sys., Inc.,* 160 F.3d at 1380 (where all of the corporate officer's actions in relation to the forum state were taken in his role as an officer of the corporation, there was no showing that he had, individually, purposefully directed his activities toward the residents of the forum state), but directed and/or caused the infringing detectable, magnetic, stainless steel veterinary hypodermic needles to be made, used, offered for sale, sold, and/or shipped into this federal judicial district and elsewhere in the United States. These allegations present circumstances similar to those presented in *Fuji Photo Film Company, Ltd. v. Jazz Photo Corporation*, in which the Federal Circuit Court of Appeals held that a CEO and later consultant of the direct infringer corporation could be liable for inducement of infringement by the corporation based on evidence that he "exerted control" over the

corporation and that his "overall acts of directing [the corporation's] business model caused the infringement." 394 F.3d 1368, 1378 (Fed. Cir. 2005). In other words, Ideal has adequately alleged "the only intent required" of Meril Rivard to satisfy the second element of a claim of inducement of patent infringement, which is "the intent to cause the acts that constitute infringement." *Id.* at 1364; *MEMC Elec. Materials, Inc.*, 420 F.3d at 1378 n.4 (where the defendant "had the intent to induce the specific acts constituting infringement, intent additionally to cause an infringement can be presumed").

In short, taking Ideal's factual allegations as true, *see Conley*, 355 U.S. at 45-46, the court finds that relief *could be* granted under a set of facts that could be proved consistent with Ideal's allegations of "inducement of infringement" by Meril Rivard. *Handeen*, 112 F.3d at 1347 (a Rule 12(b)(6) motion should be granted "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations'") (quoting *Hishon*, 467 U.S. at 73). Certainly, the court finds no "insuperable bar" at this point to Ideal's claim that Meril Rivard induced infringement of the '196 patent by Rivard Instruments. *Frey*, 44 F.3d at 671 ("A motion to dismiss [pursuant to Rule 12(b)(6)] should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.") (internal quotation marks and ellipses omitted). Therefore, Meril Rivard is not entitled to dismissal of Count I against him.

### b. The defamation and disparagement claims

The next claims that the defendants challenge for failure to state a claim are the claims in Count III and Count IV, which allege "corporate defamation" and "product

disparagement/ trade libel," respectively.[7]  In Count III, Ideal alleges that the defendants have made false and defamatory statements to third parties of and concerning Ideal to the effect that Ideal's D3 Detectable Needles infringe Rivard Instruments's '277 patent, and in Count IV, Ideal alleges that the defendants have made false and derogatory statements of and concerning the quality of Ideal's D3 Detectable Needles.  Meril Rivard contends that Ideal has failed to state claims against him in either of these Counts.  Meril Rivard's attack on these claims is twofold:  First, that neither claim alleges his individual activity, and second, that neither claim alleges defamatory statements, merely opinions.  Rivard Instruments joins in Meril Rivard's latter ground for dismissal of these counts, asserting that Ideal has alleged only non-actionable opinions.  Ideal disputes both defendants' arguments.

The parties apparently assume that Iowa law applies to these claims.  Iowa has well-developed defamation law, and state and federal courts in Iowa, including this one, have recognized that defamation claims may be based on derogatory comments on the plaintiff's conduct of its business.  *See, e.g., Park v. Hill*, 380 F. Supp. 2d 1002, 1015 (N.D. Iowa 2005) (noting that the Iowa Supreme Court has "defined 'libel' as malicious publication, expressed either in printing or in writing, or by signs and pictures, tending to injure the reputation of another person or to expose the person to public hatred, contempt, or ridicule, *or to injure the person in the maintenance of the person's business*, and 'slander' . . . as oral publication of defamatory material") (citing *Lyons v. Midwest*

---

[7]The court cannot read the defendants' brief to assert any specific argument that Count II, the claim for declaratory judgment that Ideal is not infringing Rivard Instruments's '277 patent, fails to state a claim upon which relief can be granted.  Rather, the defendants' challenges to Count II appear to be based on subject matter jurisdiction, international comity, and *forum non conveniens*, and as such, those challenges will be considered in a separate section of this ruling.

*Glazing, L.L.C.*, 235 F. Supp. 2d 1030, 1043-44 (N.D. Iowa 2002), which in turn cites cases of this court and the Iowa Supreme Court), and *Kiesau v. Bantz*, 686 N.W.2d 164, 174 (Iowa 2004)). However, so far as the court has been able to determine, the Iowa Supreme Court has never considered a defamation claim premised on false allegations of patent infringement, as alleged in Count III. Moreover, the Iowa Supreme Court has never expressly recognized a "trade libel" or "product disparagement" claim, as alleged in Count IV. However, Meril Rivard does not cite such lack of recognition as an "insuperable bar" to either of these claims. *See Frey*, 44 F.3d at 671 ("A motion to dismiss [pursuant to Rule 12(b)(6)] should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.") (internal quotation marks and ellipses omitted). Therefore, the court will assume, for purposes of the present motion to dismiss, that the Iowa Supreme Court would recognize such claims, if adequately pleaded.

  i.  *The "corporate defamation" claim.* More specifically, there seems to be little doubt that a false allegation that the plaintiff is infringing the defendants' patents, if communicated to third persons, as alleged in the "corporate defamation" claim in Count III, would satisfy the Iowa definition of defamation, because such a communication would be one "tending . . . to injure the person in the maintenance of the person's business." *Park*, 380 F. Supp. 2d at 1015 (defining defamation in part in this way); *accord Classen Immunotherapies, Inc. v. King Pharm., Inc.*, 403 F. Supp. 2d 451, 460 (D. Md. 2005) (the plaintiff stated a defamation claim under Maryland law, where the plaintiff alleged that the defendant made a defamatory statement accusing the plaintiff of patent infringement in a press release, the allegations of patent infringement were false, the accusation was made with malice or at least negligence, and the plaintiff's business reputation was harmed as a result). Moreover, it appears that such a communication

would constitute defamation *per se*, and as such, would be actionable without proof of malice, falsity, or special harm.  *Id.* at 1016 (statements are defamatory *per se* if they are, *inter alia*, defamatory imputations affecting a person in his or her business, trade, or profession).  Thus, the claim in Count III is clearly cognizable under Iowa law.

Ideal is also correct that a corporate officer can be held liable for tortious conduct that he personally or intentionally commits, *see Haupt v. Miller*, 514 N.W.2d 905, 909 (Iowa 1994) (corporate officers can be held liable for negligence if they take part personally in the commission of the tort against a third party); *Grefe v. Ross*, 231 N.W.2d 863, 868 (Iowa 1975) (corporate officers are individually liable for torts that they commit while acting within as well as outside the scope of their employment), and defamation is an "intentional tort."  *See Lawrence v. Grinde*, 534 N.W.2d 414, 419 (Iowa 1995) (libel and slander are "intentional torts"); *see also Wilson v. IBP, Inc.*, 558 N.W.2d 132, 139 (Iowa 1996) (also describing defamation or slander as an "intentional tort claim"), *cert. denied*, 522 U.S. 810 (1997).  Here, Ideal has specifically alleged that Meril Rivard personally made the allegedly defamatory allegations of patent infringement by Ideal to third parties that are at issue in Count III.  *See Haupt*, 514 N.W.2d at 909 (a corporate officer can be liable for personally taking part in the commission of a tort); *Grefe*, 231 N.W.2d at 868 (corporate officers are individually liable for torts that they commit, whether they are acting within or outside the scope of their employment).  Therefore, Meril Rivard is not entitled to dismissal of this claim on the ground that he cannot be held individually liable or that Ideal has not alleged his individual tortious conduct.

Meril Rivard nevertheless contends that Ideal has failed to state a cognizable defamation claim against him, because the allegedly defamatory accusation of patent infringement is merely an "opinion."  Meril Rivard is correct that "[o]pinion is absolutely protected under the First Amendment," and therefore, is not actionable for defamation.

*Kiesau*, 686 N.W.2d at 177. Meril Rivard is also correct that the Iowa Supreme Court has "'adopted various factors to determine whether a statement is fact or opinion,'" consisting of the following: (1) the precision and specificity of the statement; (2) the verifiability of the statement; and (3) the literary context in which the statement was made. *Park*, 380 F. Supp. 2d at 1017 (quoting *Kiesau*, 686 N.W.2d at 177). The Iowa Supreme Court has also explained that "[t]he third factor, literary context, includes the 'social context,' which focuses on the category of the publication, its style and intended audience, and the 'political context' in which the statement was made." *Kiesau*, 686 N.W.2d at 177). Meril Rivard points to the lack of specificity in his alleged statement about the manner in which Ideal's product purportedly infringed Rivard Instruments's '277 patent and the difficulty of proving or verifying infringement as showing that his statement was only an "opinion."

The court finds Meril Rivard's "opinion" argument unpersuasive. This court notes that the United States Supreme Court has recognized that "expressions of 'opinion' may often imply an assertion of objective fact," and if a reasonable trier of fact could find that the so-called opinion could be interpreted as a false assertion of fact, the statement is actionable for defamation. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-21 (1990). Here, the statements attributed to Meril Rivard implied an assertion of objective fact, that Ideal was stealing Rivard Instruments's patented invention, *see id.*, which was sufficiently specific and verifiable to be actionable, and those statements were made in a "social context" specifically intended to discourage Ideal's customers, distributors, and manufacturer from continuing to do business with Ideal. From those statements, an intention to assert, as a fact, that Ideal was conducting its business improperly, can reasonably be inferred. *Kiesau*, 686 N.W.2d at 177 (considering such factors to determine whether a statement is an actionable statement of fact or merely one of opinion).

In summary, taking Ideal's factual allegations as true, *see Conley*, 355 U.S. at 45-46, the court finds that relief *could be* granted against either or both defendants under a set of facts that could be proved consistent with Ideal's allegations of "corporate defamation." *Handeen*, 112 F.3d at 1347 (a Rule 12(b)(6) motion should be granted "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations'") (quoting *Hishon*, 467 U.S. at 73). Certainly, the court finds no "insuperable bar" at this point to Ideal's "corporate defamation" claim against either defendant. *Frey*, 44 F.3d at 671 ("A motion to dismiss [pursuant to Rule 12(b)(6)] should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.") (internal quotation marks and ellipses omitted). Therefore, the court finds no basis for dismissal of Ideal's "corporate defamation" claim in Count III against either Meril Rivard or Rivard Instruments.

ii. *The "product disparagement/trade libel" claim.* Turning to the "product disparagement/trade libel" claim in Count IV, although the Iowa Supreme Court has never recognized such a claim, courts in the neighboring state of Minnesota, among other jurisdictions, have recognized such a claim. As the Eighth Circuit Court of Appeals has explained, under Minnesota law, to prove a claim of product disparagement, the plaintiff must prove that the defendant published a false or disparaging statement concerning the plaintiff's product and that special damages resulted from the publication. *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1337-39 (8th Cir. 1997) (citing *Advanced Training Sys. v. Caswell Equip. Co., Inc.*, 352 N.W.2d 1 (Minn. 1984)). The "special damages" at issue are damages "'in the form of pecuniary loss directly attributable to defendant's false statements.'" *LensCrafters, Inc. v. Vision World, Inc.*, 943 F. Supp. 1481, 1490 (D. Minn. 1996) (quoting *Advanced Training Sys.*, 352 N.W.2d at 7). More specifically still,

"If the plaintiff cannot show a loss of specific sales, it may still satisfy this burden by proving a general decline of business, provided that the decline can be shown to have resulted from the defendant's disparaging statements, and not because of other possible causes." *Id.* (citing *Advanced Training Sys.*, 352 N.W.2d at 7-8).

Assuming, without deciding, that the Iowa Supreme Court would recognize a comparable claim for "product disparagement/trade libel," this court finds that Ideal has adequately alleged such a claim against both Meril Rivard and Rivard Instruments. Again, Ideal has specifically alleged that Meril Rivard personally made the disparaging comments of and concerning the quality of Ideal's products that are at issue in Count IV. Thus, he can be held personally liable on such a claim. *See Haupt*, 514 N.W.2d at 909 (a corporate officer can be liable for personally taking part in the commission of a tort); *Grefe*, 231 N.W.2d at 868 (corporate officers are individually liable for torts that they commit, whether they are acting within or outside the scope of their employment). Next, Ideal has alleged that Meril Rivard's comments, on behalf of Rivard Instruments, were false and disparaging statements concerning Ideal's product. *See Porous Media Corp.*, 110 F.3d at 1337-39 (first element of a claim of product disparagement or "trade libel"). Finally, Ideal has also alleged a basis for special damages resulting from the publication, by alleging that the disparaging statements were made for the purpose of causing harm to Ideal's reputation and causing economic harm to Ideal, and that the statements caused damages including, but not limited to, damages to Ideal's business reputation, loss of business, loss of current and/or potential customers, and loss of economic gain. *See id.* (second element); *LensCrafters, Inc.*, 943 F. Supp. at 1490 (defining the required "special damages).

In summary, taking Ideal's factual allegations as true, *see Conley*, 355 U.S. at 45-46, the court finds that relief *could be* granted under a set of facts that could be proved

against either defendant consistent with Ideal's allegations of "product disparagement/trade libel." *Handeen*, 112 F.3d at 1347 (a Rule 12(b)(6) motion should be granted "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations'") (quoting *Hishon*, 467 U.S. at 73). Certainly, the court finds no "insuperable bar" at this point to Ideal's "product disparagement/trade libel" claim. *Frey*, 44 F.3d at 671 ("A motion to dismiss [pursuant to Rule 12(b)(6)] should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.") (internal quotation marks and ellipses omitted). Therefore, the court finds no basis for dismissal of Ideal's "product disparagement/trade libel" claim in Count IV against either Meril Rivard or Rivard Instruments.

### c. *The tortious interference claims*

The remaining claims against the defendants are claims of "tortious interference with advantageous business relationships and expectancies." In Count V, Ideal alleges that the defendants have intentionally and falsely accused Ideal of infringing Rivard Instruments's '277 patent and that the defendants have falsely informed existing and prospective customers and distributors that, if they purchase or use Ideal's D3 Detectable Needles, they will infringe the '277 patent and may be sued. In Count VI, Ideal alleges that the defendants have interfered with the relationship between Ideal and its manufacturer by making false and disparaging statements concerning Ideal and attempting to intimidate the manufacturer by threatening to return to its facility with lawyers.

The elements of a "tortious interference" claim differ slightly depending upon whether the interference is with an existing or a prospective business relationship. The elements of tortious interference with an *existing* business relationship are the following: (1) the plaintiff had a valid contractual relationship with a third party; (2) the defendant

43

knew of that relationship; (3) the defendant intentionally and improperly interfered with that relationship; (4) the defendant's action caused the third party to breach its contractual relationship with the plaintiff; and (5) the amount of damages. *Grimm v. U.S. West Comms., Inc.*, 644 N.W.2d 8, 12 (Iowa 2002) (citing *Water Dev. Co. v. Board of Water Works*, 488 N.W.2d 158, 161 (Iowa 1992)).[8] The elements of tortious interference with a *prospective* business relationship, on the other hand, are the following: (1) the plaintiff had a prospective contractual or business relationship with a third party; (2) the defendant knew of the prospective relationship; (3) the defendant intentionally and improperly interfered with the relationship; (4) the defendant's interference caused the relationship to fail to materialize; and (5) the amount of resulting damages. *Blumenthal Inv. Trusts v. City of West Des Moines*, 636 N.W.2d 255, 269 (Iowa 2001) (citing *Iowa Coal Mining Co. v. Monroe County*, 555 N.W.2d 418, 438 (Iowa 1996)). Both torts require proof that the defendant's interference was "improper," but they define the "impropriety" differently. *See RTL Distrib., Inc. v. Double S Batteries, Inc.*, 545 N.W.2d 587, 590 (Iowa Ct. App. 1996) (citing *Nesler v. Fischer & Co., Inc.*, 452 N.W.2d 191, 199 (Iowa 1990)). The third element of the tort of interference with a *prospective* business relationship requires the plaintiff to prove that "the defendant acted with the sole or predominant purpose to injure or financially destroy the plaintiff." *Compiano v. Hawkeye Bank & Trust of Des Moines*, 588 N.W.2d 462, 464 (Iowa 1999); *Willey v. Riley*, 541 N.W.2d 521, 526-27 (Iowa 1995). No such purpose to injure or destroy the plaintiff is required for the third element of the tort of interference with an *existing* business relationship. *Nesler*, 452 N.W.2d at 199.

---

[8]Again, the parties appear to assume that Iowa law applies to these "tortious interference" claims, because they raise no "choice of law" or "conflict of laws" issue.

Meril Rivard challenges the "tortious interference" claims against him, first, on the ground that the claims do not allege his individual tortious conduct. His second challenge, in which Rivard Instruments also joins, is that any alleged interference consisted of stating opinions, not facts, which could be construed to be an argument that the conduct on which these claims are based was not "improper." The court is not persuaded by either argument.

As to Meril Rivard's first argument, the court finds that the Complaint alleges Meril Rivard's personal conduct as the basis for these tort claims, so that he can be held liable on them. *See Haupt*, 514 N.W.2d at 909 (a corporate officer can be liable for personally taking part in the commission of a tort); *Grefe*, 231 N.W.2d at 868 (corporate officers are individually liable for torts that they commit, whether they are acting within or outside the scope of their employment). As to the defendants' contention that there are no allegations of "improper" interference, the court found above that Ideal had adequately alleged statements that implied assertions of objective fact, such that the statements could be defamatory. Hence, the statements alleged do constitute allegedly "improper" interference with Ideal's business and, furthermore, reasonably imply an intent to injure or destroy Ideal's business by disrupting its manufacturing and distribution capabilities and markets. *See RTL Distrib., Inc.*, 545 N.W.2d at 590 (both torts require that the defendant's interference was "improper," but they define the "impropriety" differently, citing *Nesler*, 452 N.W.2d at 199); *see also Compiano*, 588 N.W.2d at 464 (the tort of interference with a *prospective* business relationship requires the plaintiff to prove that "the defendant acted with the sole or predominant purpose to injure or financially destroy the plaintiff"); *Willey*, 541 N.W.2d at 526-27 (same).

Thus, taking Ideal's factual allegations as true, *see Conley*, 355 U.S. at 45-46, the court finds that relief *could be* granted under a set of facts that could be proved consistent

with Ideal's allegations of "tortious inteference with business relations" in Counts V and VI. *Handeen*, 112 F.3d at 1347 (a Rule 12(b)(6) motion should be granted "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations'") (quoting *Hishon*, 467 U.S. at 73). Certainly, the court finds no "insuperable bar" at this point to these claims against either defendant. *Frey*, 44 F.3d at 671 ("A motion to dismiss [pursuant to Rule 12(b)(6)] should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.") (internal quotation marks and ellipses omitted). Therefore, the court finds no basis for dismissal of Ideal's "tortious interference" claims in Counts V and VI against either defendant.

## C. Jurisdiction Over The Foreign Patent Claim

The court turns, next, to the defendants' joint assertion that the court lacks jurisdiction, or should decline to exercise jurisdiction, over the declaratory judgment claim in Count II. That claim seeks a declaration that Ideal is not infringing Rivard Instruments's Canadian patent, the '277 patent.

### 1. Arguments of the parties

The defendants contend that the court does not have subject matter jurisdiction over this claim or, in the alternative, that the court should decline to exercise jurisdiction over the claim on the basis of international comity and abuse of process. More specifically, the defendants contend that United States courts have no jurisdiction over the question of the validity and infringement of foreign patents; rather, only a Canadian court can properly address these questions concerning a Canadian patent. Moreover, they contend that, in the interest of international comity, United States courts should decline to exercise jurisdiction over a claim involving the validity and infringement of a Canadian patent, when a

Canadian court is already hearing the matter, as it is here, in Rivard Instruments's own action in Canadian Federal Court. They point out that Ideal has already asserted a defense of non-infringement of the '277 patent in the Canadian action. They contend that Ideal's declaratory judgment claim is improper for the further reason that the claim attempts to assert, in the guise of a declaratory judgment claim, a defense that should properly be asserted in the Canadian infringement action. Under these circumstances, they contend that the court should exercise its discretion to decline to hear such an improper declaratory judgment claim. While the defendants assert that Ideal will suffer no procedural or other prejudice by being forced to litigate the question of infringement of the '277 patent in Canada, they argue that Ideal has abused process by attempting to assert this claim in this court, when the Canadian court is already hearing the matter.

For its part, Ideal contends that the question of whether United States courts can exercise jurisdiction over claims involving foreign patents is now before the Federal Circuit Court of Appeals, so that this court should not even consider the defendants' arguments for dismissal of Count II until the Federal Circuit Court of Appeals has ruled. Nor should the court abstain from hearing Count II, Ideal contends, on the basis of "international comity," because that principle does not apply to simultaneous proceedings, only to foreign judgments, and even if it did, there is no sensitive international relations issue in this commercial case that would warrant abstention. In response to the defendants' abuse of process argument, Ideal contends that it is the defendants, not Ideal, that has abused process by urging that all of Ideal's claims under United States law should be decided by a Canadian court. Moreover, Ideal contends that there are doubts about the ability of a Canadian court to hear the non-infringement claim and to render an enforceable judgment on that issue.

In reply, the defendants contend that the appeal currently before the Federal Circuit Court of Appeals is not likely to be instructive. They explain that the Federal Circuit Court of Appeals is currently considering jurisdiction in cases involving foreign patents that are "counterparts" to United States patents, that is, patents with the same owners or assignees as the United States patents, not cases involving jurisdiction over a separately owned and unrelated foreign patent in a case otherwise involving a United States patent, as is the situation here. The defendants contend, further, that Ideal's concerns about the ability of the Canadian court to hear or render an enforceable judgment on issues relating to the '277 patent are overblown, where, by Canadian statute, the Canadian Federal Court has jurisdiction over Canadian patents.

   2.   *Analysis*

      a.   *Application of existing precedent*

The court finds that the question of its jurisdiction over Ideal's claim for a declaratory judgment of non-infringement of Rivard Instruments's foreign patent is guided, indeed controlled, by the decision of the Federal Circuit Court of Appeals in *Mars, Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368 (Fed. Cir. 1994). In *Mars*, the plaintiff asserted that the court had original and supplemental jurisdiction over its claim of infringement of its Japanese patent in addition to its claims of infringement of its United States patents. *Mars*, 24 F.3d at 1370-71. The defendant, however, asserted that the court should dismiss the claim concerning infringement of the Japanese patent on the basis of lack of subject matter jurisdiction, principles of international comity, and the doctrine of *forum non conveniens*. *Id.* at 1371. The Federal Circuit Court of Appeals held that the United States district court did not have either original or supplemental jurisdiction over the claim of infringement of the Japanese patent. *Id.* at 1376. The court's reasoning bears some further analysis.

First, in *Mars*, the Federal Circuit Court of Appeals rejected the plaintiff's contention that United States federal courts have original jurisdiction over claims of infringement of a foreign patent under 28 U.S.C. § 1338(b), which grants subject matter jurisdiction to United States federal courts over non-federal "unfair competition" claims when joined with a substantial and related claim under United States patent laws. *Id.* at 1372-73. The court rejected the plaintiff's argument that "unfair competition" could encompass a claim of infringement of a foreign patent, because patent infringement and unfair competition causes of action are dissimilar. *Id.* Moreover, the court reasoned,

> In the absence of clear evidence that a claim of infringement of a foreign patent was intended by Congress to qualify as a claim of unfair competition under section 1338(b), we are unable to read the statute as expansively as [the plaintiff] urges. To interpret the term "unfair competition" in section 1338(b) in a manner inconsistent with the ordinary and usual sense of that word would impermissibly expand the jurisdiction of the district courts beyond that clearly envisioned or desired by Congress.

*Mars, Inc.*, 24 F.3d at 1373. Thus, the court held "as a matter of law that a claim of infringement of a foreign patent does not constitute a claim of unfair competition within the meaning of section 1338(b)," and as such, the district court did not have original jurisdiction over such a claim. *Id.* at 1373-74.

Turning to supplemental jurisdiction, the court in *Mars* noted that the lower court had assumed that it did have supplemental jurisdiction over the foreign patent claim, but had declined to exercise that jurisdiction. *Id.* at 1371. The appellate court noted that, in a prior decision, *Ortman v. Stanray*, 371 F.2d 154 (7th Cir. 1967), the Seventh Circuit Court of Appeals had held that the district court did have supplemental jurisdiction over a claim of infringement of foreign patents. *See Mars, Inc.*, 24 F.3d at 1374. The Federal

Circuit Court of Appeals noted that the appellate court had reached that conclusion in *Ortman*, because "'[a]ll of the actions of defendant of which complaint is made are the result of defendant doing similar acts both in and out of the United States.'" *Id.* (quoting *Ortman*, 371 F.2d at 158). Moreover, on remand in *Ortman*, the district court had "found jurisdiction on the basis that the 'charges arising from the sale and manufacture of the same instrumentality in various countries clearly arise from "a common nucleus of operative fact."'" *Id.* at 1374-75 (quoting the lower court in *Ortman*, in turn quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).

However, the Federal Circuit Court of Appeals found in *Mars* that, in the case before it, neither "similar acts" nor the "same instrumentality" were at issue in the foreign patent claim and the United States patent claim. *Id.* at 1375. Instead, the court held that "the foreign patent infringement claim at issue here is not so related to the U.S. patent infringement claim that the claims form part of the same case or controversy and would thus ordinarily be expected to be tried in one proceeding." *Id.* The court explained,

> The respective patents are different, the accused devices are different, the alleged acts are different, and the governing laws are different. The assertion of supplemental jurisdiction over the Japanese infringement claim would in effect result in the trial court having to conduct two separate trials at one time.

*Mars, Inc.*, 24 F.3d at 1375. Thus, the court held that the district court did not have the power to hear the claim of infringement of the foreign patent under § 1367. *Id.*

Finally, the court in *Mars* addressed the "public interest" factors of a *forum non conveniens* analysis, in part to avoid issues that might arise on remand. The court's ruling in this regard is also instructive:

> In refusing to exercise jurisdiction over the Japanese patent infringement claim, the district court found that that claim would require the court to resolve complex issues of

Japanese procedural and substantive law, a task further
complicated by "having to agree on the proper translation of
laws, documents and other communications." 825 F. Supp.
[73,] 76, 27 USPQ2d [1951,] 1953 [(D. Del. 1993)]. The
court also found that general concerns respecting international
comity counsel against exercising jurisdiction over a matter
involving a Japanese patent, Japanese law, and acts of a
Japanese defendant in Japan. *Id. See Stein Assoc., Inc. v.
Heat and Control, Inc.*, 748 F.2d 653, 658, 223 USPQ 1277,
1280 (Fed. Cir. 1984) ("Only a British court, applying British
law, can determine ⋯ infringement of British patents.").

Thus, the trial court has already made findings pertinent
to a *forum non conveniens* analysis which may support
dismissal in favor of adjudicating the Japanese patent
infringement claim in a suitable forum in Japan. Those
findings are not clearly erroneous; thus any attempt to replead
jurisdiction based on diversity of citizenship at this point would
seem ill-founded.

*Mars, Inc.*, 24 F.3d at 1376.

As applied to this case, the decision in *Mars* also warrants dismissal of Count II.
Although Ideal does not assert that this court has "original" jurisdiction over the
declaratory judgment claim concerning infringement of Rivard Instruments's Canadian
patent, it is nevertheless clear that *Mars* counsels rejection of Ideal's argument for
"supplemental" jurisdiction. Here, as in *Mars*, supplemental jurisdiction is not proper,
because the claims involving the defendants' alleged infringement of Ideal's United States
patents and the claim involving Ideal's alleged infringement or non-infringement of the
defendants' Canadian patent are *not* all "'the result of defendant doing similar acts both
in and out of the United States,'" *see id.* (quoting *Ortman*, 371 F.2d at 158), because the
*actor* and the *acts* in each claim are different. Moreover, this court cannot find that the
claims of infringement of the United States and foreign patents arise from "a common

nucleus of operative fact," *see id.* at 1374-75 (quoting the lower court in *Ortman*, in turn quoting *Gibbs*, 383 U.S. at 726, with internal quotation marks omitted), because as in *Mars*, neither "similar acts" nor the "same instrumentality" are at issue in the foreign patent claim and the United States patent claim. *Id.* at 1375. Also, "[t]he respective patents are different, the accused devices are different, the alleged acts are different, and the governing laws are different," so that "[t]he assertion of supplemental jurisdiction over the [Canadian] infringement claim would in effect result in [this] court having to conduct two separate trials at one time." *Id.* Finally, even in the absence of the difficulties of translation of laws, documents, and communications, where the Canadian patent and Canadian laws are also in English, *compare id.* at 1376 (recognizing that difficulties of translation were relevant to a claim of infringement of a Japanese patent), this court would nevertheless be required "to resolve complex issues of [Canandian] procedural and substantive law," and "general concerns respecting international comity counsel against exercising jurisdiction over a matter involving a [Canadian] patent [and] [Canadian] law." *Id.* at 1376. Indeed, the governing principle in *Mars*, or at least the ordinary rule, seems to be that only a foreign court, applying its law, can determine infringement of patents granted under that foreign jurisdiction's law. *See id.* (citing *Stein Assoc., Inc.*, 748 F.2d at 658, for the proposition that "[o]nly a British court, applying British law, can determine ⋯ infringement of British patents").

Thus, application of the standards articulated in *Mars* counsels against the exercise of supplemental jurisdiction over Ideal's claim for declaratory judgment of non-infringement of Rivard Instruments's Canadian patent.

### b.    Ideal's "wait and see" argument

Although Ideal acknowledges the existence of the decision in *Mars*, Ideal contends that this court should delay its disposition of the question of its jurisdiction over the claim

of non-infringement of the Canadian patent, because the Federal Circuit Court of Appeals is now revisiting the supplemental jurisdiction issue presented in *Mars* in *Voda v. Cordis Corp.*, Appeal No. 2005-1238. In contrast, the defendants contend that a decision on the appeal in *Voda* will not be instructive here, because that case involves the plaintiff's claims of infringement of its own patents, both United States and foreign, and thus involves so-called "counterpart" foreign and United States patents owned by the same party for the same invention, but this case involves separate foreign and United States patents owned by opposing parties.

Determination of whether the court should await disposition of the appeal in *Voda* before ruling on the question of supplemental jurisdiction in this case depends, in large part, on whether the appellate decision is likely to be instructive here. That question, in turn, depends upon the issues presented to the lower and appellate courts. The lower court in *Voda* considered whether or not it had supplemental jurisdiction over claims of infringement of a foreign patent in the context of the plaintiff's motion to amend his complaint to add claims of infringement of his five foreign patents in addition to his claims of infringement of three United States patents. *See Voda v. Cordis Corp.*, 2004 WL 3392022, *1 (W.D. Okla. Aug. 2, 2004). The district court distinguished the decision in *Mars* on the basis that *Mars* did not stand for the broad rule that United States courts do *not* have supplemental jurisdiction over litigation of foreign patents in the same action with United States patents. *See id.* Rather, the district court held that the case before it was "more akin to *Ortman* than to *Mars*," because all of the actions of the defendant on which claims were based were the result of the defendant doing similar acts both in and out of the United States, and in such circumstances, the exercise of supplemental jurisdiction was appropriate. *Id.* (quoting *Ortman*, 371 F.2d at 158). The Federal Circuit Court of Appeals granted the petition for appeal on certification by the district court for

interlocutory appeal of its determination that it did have supplemental jurisdiction over the plaintiff's claims of infringement of the plaintiff's foreign patents "because of the paucity of law surrounding this issue." *See Voda v. Cordis Corp.*, 122 Fed. Appx. 515 (Fed. Cir. 2005).

It is not sufficient to argue, as the defendants do here, that the issue on appeal in *Voda* is different from the issue presented here on the ground that *Voda* involves "counterpart" foreign and United States patents owned by the same party, while this case involves separate foreign and United States patents owned by opposing parties. After all, in *Mars*, the Federal Circuit Court of Appeals also addressed the issue of supplemental jurisdiction in a case involving foreign and United States patents all owned by the plaintiff, but resolved the issue on the basis of the relationship between *the claims* of infringement of the foreign patents and the United States patents, not on the basis of the respective ownership of the foreign and United States patents. *See Mars, Inc.*, 24 F.3d at 1374-76 (the plaintiff asserted that the court had supplemental jurisdiction over its claim of infringement of its Japanese patent, in addition to its claims of infringement of its United States patents, but the court rejected that contention on the basis of a lack of relationship between the claims involving the United States and foreign patents).

Nevertheless, two considerations persuade the court not to wait for disposition of the appeal in *Voda* before ruling on the supplemental jurisdiction question in this case. The first consideration is that existing precedent from the Federal Circuit Court of Appeals, embodied in the *Mars* decision, states that lack of supplemental jurisdiction over claims involving infringement of foreign patents is at least the general rule. *See id.* at 1376 (quoting *Stein, infra*); *Stein Assoc., Inc.*, 748 F.2d at 658 ("Only a British court, applying British law, can determine ⋯ infringement of British patents."); *contra Voda*, 2004 WL 3392022 at *1 (suggesting that *Mars* did not state a broad rule that United States

54

courts do *not* have supplemental jurisdiction over litigation of foreign patents in the same action with United States patents). This court cannot simply ignore the general rule already articulated by the Federal Circuit Court of Appeals or wait to see if the Federal Circuit Court of Appeals will change its mind. The second consideration is that, even were the Federal Circuit Court of Appeals to adopt an "*Ortman* exception" in its decision on appeal in *Voda*—under which the district court would have supplemental jurisdiction over claims of infringement of foreign patents where "the 'charges arising from the sale and manufacture of the same instrumentality in various countries clearly arise from "a common nucleus of operative fact,"'" *see id.* at 1374-75 (quoting the lower court in *Ortman*, in turn quoting *Gibbs*, 383 U.S. at 726)—such a holding would have no impact on this court's supplemental jurisdiction over the claim involving infringement of the Canadian patent in this case. As explained above, this court has already found that the facts that could put a claim of infringement of a foreign patent within the ambit of such an "*Ortman* exception" are not present in this case.

Therefore, in accordance with the decision in *Mars*, this court finds that it does not have supplemental jurisdiction over Ideal's claim for declaratory judgment of non-infringement of the Canadian patent, and even if it did, the court would decline to exercise supplemental jurisdiction over that claim. The defendants' motion to dismiss will be granted as to Count II of Ideal's Complaint.[9]

---

[9]In light of the court's conclusion that it does not have supplemental jurisdiction over Count II, or that if it does, it would decline to exercise such supplemental jurisdiction, the court finds that it need not consider the defendants' additional contentions that Count II should be dismissed on the grounds of international comity and abuse of process, at least not to any greater extent than the court has already considered issues related to those arguments in making the supplemental jurisdiction determination.

### D. Forum Non Conveniens

In addition to their jurisdictional challenge to Count II, the defendants both assert that Counts II through VI should be dismissed under the *forum non conveniens* doctrine. This contention goes to the issue of whether this forum or a Canadian forum is the proper one to hear all of the parties' claims, with the exception of Ideal's claim of infringement by the defendants of Ideal's United States patents in Count I.

#### 1. Arguments of the parties

The defendants contend that this is an appropriate case in which the court should relinquish jurisdiction on *forum non conveniens* grounds. First, they contend that there is a convenient forum, in Canada, where litigation between the parties is already proceeding, and where Ideal has already asserted the claims that it is asserting in this forum. Next, the defendants contend that the "private interest" factors favor dismissal of Counts II through VI, because the defendants and all of their documents and witnesses are in Canada, while Ideal and its documents and witnesses are in Michigan, but there is no nexus at all with Iowa for any of the parties. Further, the defendants contend that Iowa cannot ensure compulsory process for the attendance of unwilling witnesses, and that the costs of attendance of even willing witnesses will be prohibitive. While they concede that view of the premises is irrelevant here, they contend that other practical problems will make trial here neither easy, expeditious, nor inexpensive, again where litigation in a convenient forum in Canada is already in progress. Maintenance of two parallel actions, they contend, is wasteful of the resources of the court and the parties. They also contend that public interest factors, to the extent that they are implicated, weigh in favor of dismissal of this case. For example, they contend that this forum has no localized interest in deciding the controversies between the parties, where no Iowa parties or Iowa property are involved; any conflict-of-laws between Iowa and Canada will result in application of

Canadian law; dismissing the case in Iowa will avoid unnecessary problems in conflicts of laws or application of Canadian law; and it is unfair to burden the citizens of Iowa with a case in which they have no interest.  Failing outright dismissal, the defendants assert that the court should stay this case pending outcome of the parallel and first-filed action in Canada.

Ideal, however, contends that dismissal of this case on *forum non conveniens* grounds is not appropriate.  First, Ideal contends that Iowa is an appropriate venue and disputes that any adequate alternative forum exists, where the Canadian forum is both inadequate and highly inconvenient, and litigating there would only shift the burden of inconvenience from one party to the other.  Citing 28 U.S.C. § 1404, Ideal also contends that its choice of forum is entitled to deference and that the defendants have not met their burden to show that the case should be transferred to Canada, not least because Iowa does have a factual nexus to and interest in the claims at issue.

In reply, the defendants assert that they are not seeking "transfer" of venue pursuant to 28 U.S.C. § 1404, but dismissal pursuant to the *forum non conveniens* doctrine.  They reiterate that the pertinent factors weigh in favor of dismissal.

2.    *Applicable standards*

The court can find no pronouncement by the Federal Circuit Court of Appeals on whether a question of *forum non conveniens* in a patent case is governed by Federal Circuit law or the law of the regional circuit, and the parties have not directly addressed the question.  However, because the court deems *forum non conveniens* to be in the nature of a procedural challenge to the exercise of the court's jurisdiction not pertaining to patent law, the court believes that it is a question controlled by the law of the regional circuit. *Cf. Showmaker v. Advanta USA, Inc.*, 411 F.3d 1366, 1367-68 (Fed. Cir. 2005) ("A motion to dismiss for failure to state a claim upon which relief can be granted is a purely

procedural question not pertaining to patent law, to which this court applies the rule of the regional circuit."). In any event, it appears that the Federal Circuit Court of Appeals and the Eighth Circuit Court of Appeals consider essentially the same factors in making a *forum non conveniens* determination. *Compare Bonzel v. Pfizer, Inc.*, 439 F.3d 1358, 1362 (Fed. Cir. 2006) ("Dismissals on the ground of *forum non conveniens* are reviewed for abuse of discretion."); *Mars, Inc.*, 24 F.3d at 1376 (identifying "public interest factors" in the *forum non conveniens* analysis from *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991), which in turn quotes *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)); *with EFCO Corp. v. Aluma Sys. USA, Inc.*, 268 F.3d 601, 603 (8th Cir. 2001) ("A trial court has broad discretion in deciding a motion to dismiss based on *forum non conveniens* and that decision will be overturned only for abuse of discretion," and explaining that the determination is made on the basis of the "public and private interest factors established in *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981)").

Under Eighth Circuit *forum non conveniens* law, "the natural plaintiff's choice of forum is controlling unless 'exceptional circumstances' exist." *BASF Corp. v. Symington*, 50 F.3d 555, 557 (8th Cir. 1995) (internal quotation marks and citations omitted); *Reid-Walen v. Hansen*, 933 F.2d 1390, 1395 (8th Cir. 1991). Thus, "[t]he defendant has the burden of persuasion in proving all elements necessary for the court to dismiss a claim based on forum non conveniens." *Reid-Walen*, 933 F.2d at 1393. Conclusory assertions by the defendant are not enough to meet this burden. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1390 (8th Cir. 1995). The court's determination on a *forum non conveniens* issue is informed by consideration of various factors, relating to the "private interests" and the "public interests" implicated by

the choice of forum. *Reid-Walen*, 933 F.2d at 1394-1401. In *Piper Aircraft Co.*, the United States Supreme Court identified the pertinent factors as follows:

> The factors pertaining to the private interests of the litigants included the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." The public factors bearing on the question included the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft Co.*, 454 U.S. at 241 n.6 (citations omitted); *compare Reid-Walen*, 933 F.2d at 1394-1401 (identifying the "private interest factors" as including the residence of the parties and deference to the plaintiff's choice of forum; the location of key witnesses; access to evidence and view of the premises; the defendants' ability to implead; the plaintiff's ability to litigate in a foreign forum; and the expectations of the parties; and identifying the "public interest factors" as including the interest of the forum in the dispute and which forum's substantive law applies). The court will consider these factors, at least to the extent that they are relevant here, in turn.

    3.    *Weighing of the factors*

        a.    *"Private interest" factors*

The court finds that the balance of the "private interest" factors in this case is, at best, a wash. In consideration of these factors, it is particularly "important to note that in

forum non conveniens cases involving a potential reference to a foreign court, the relevant distinction is whether or not the plaintiff who has selected the federal forum is a United States citizen, not whether the plaintiff resides in the particular district where the case was brought." *Reid-Walen*, 933 F.2d at 1394 (citing *Interpane Coatings v. Australia & New Zealand Banking Group Ltd.*, 732 F. Supp. 909, 915 (N.D. Ill. 1990)). As the Eighth Circuit Court of Appeals has explained, "In other words, the 'home' forum for the plaintiff is any federal district in the United States, not the particular district where the plaintiff lives." *Id.* Here, Ideal, the plaintiff who has selected this federal forum, is a United States citizen, so that this forum is a "home" forum for Ideal. *Id.*

Nor can the defendants convince the court that Ideal has selected this particular federal forum simply "in order to harass or vex" the defendants or "to select a forum 'at a most inconvenient place for an adversary, even at some inconvenience to [it]self.'" *Cf. id.* (such conduct would be inappropriate) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)). In this case, Ideal initially brought suit in the forum in which it is incorporated and has its primary place of business, Michigan, but voluntarily dismissed that suit and refiled in Iowa, based on what Ideal took to be representations by the defendants that they had contacts with this forum, but did not have such contacts with Michigan. Moreover, as Ideal points out, this forum is a center of the livestock industry in which both the plaintiff's and the defendants' products are used, and as this court noted above, it is "clear that the tortious injury caused by patent infringement occurs within the state where the allegedly infringing sales are made." *Commissariat a L'Energie Atomique*, 395 F.3d at 1318. Thus, it cannot be said that this forum, a "home" forum for the plaintiff, was selected simply to "vex or harass" the defendants. Indeed, the defendants' protestations that this forum is "inconvenient" ring somewhat hollow, when they have conceded that this is the correct forum to litigate the claims involving infringement of

United States patents to which the other claims are supplemental. *Cf. EFCO Corp.*, 268 F.3d at 603 (where the plaintiff had initially sued the defendant in Canada, the plaintiff could not convincingly assert that Canada would be a completely inconvenient forum for it).

More specifically, it cannot be denied that there are some difficulties with access to proof, availability of witnesses and costs of attendance in this forum, and other practical problems with trial here. *See Piper Aircraft Co.*, 454 U.S. at 241 n.6 (expressly identifying these "private interest" factors). Nevertheless, what is missing from the defendants' showing is any real indication that any of these problems are prohibitive or that they will be less dire in a forum in Canada. *Reid-Walen*, 933 F.2d at 1393 ("The defendant has the burden of persuasion in proving all elements necessary for the court to dismiss a claim based on forum non conveniens."). Indeed, the defendants' assertions on these factors are little more than conclusory, and as such, are insufficient to meet their burden. *Northrup King Co.*, 51 F.3d at 1390.

Thus, the "private interest" factors do not show any "exceptional circumstances" warranting disturbing Ideal's choice of forum. *BASF Corp.*, 50 F.3d at 557 ("[T]he natural plaintiff's choice of forum is controlling unless 'exceptional circumstances' exist.").

       *b.*      *"Public interest" factors*

Nor does weighing the "public interest" factors lead to a different result. The defendants have failed to identify any administrative difficulties weighing against this forum and, to the extent that this forum is a "home" forum for the United States plaintiff, as well as a center of the industry impacted by the parties' products, there is local interest in having localized controversies decided in this "home" forum. *See Piper Aircraft Co.*, 454 U.S. at 241 n.6 (identifying these factors as "public interest" factors). Moreover, the

court finds the defendants' assertions of the supposed problems with conflict of laws and application of foreign laws to be illusory. *Id.* (also identifying these factors as "public interest" factors). The court does not find that the applicable law for *any* claim remaining in this lawsuit would necessarily be Canadian law, now that the claim concerning infringement of the Canadian patent is subject to dismissal, and the court found above that the claims against individual defendant Meril Rivard are premised on his individual conduct; thus, they do not involve a theory of "piercing the corporate veil," the only issue on which the defendants asserted that Canadian law was instructive or controlling. Finally, the court concludes that it is not unfair to burden the citizens of Iowa with jury duty in this case, because this is not an "unrelated forum." *Id.* (also identifying this factor as a "public interest" factor). Again, where it is "clear that the tortious injury caused by patent infringement occurs within the state where the allegedly infringing sales are made," *Commissariat a L'Energie Atomique*, 395 F.3d at 1318, this forum, in which allegedly infringing sales were made, has an interest in resolving the primary claim of infringement of Ideal's United States patent and, by extension of supplemental jurisdiction, an interest in resolving related claims.

Thus, the "public interest" factors also do not show any "exceptional circumstances" warranting disturbing Ideal's choice of forum. *BASF Corp.*, 50 F.3d at 557 ("[T]he natural plaintiff's choice of forum is controlling unless 'exceptional circumstances' exist."). Therefore, the defendants have failed to meet their burden of proving that dismissal on the basis of *forum non conveniens* is warranted in this case, and the part of their motion to dismiss seeking dismissal on that ground will be denied. *Reid-Walen*, 933 F.2d at 1393 ("The defendant has the burden of persuasion in proving all elements necessary for the court to dismiss a claim based on forum non conveniens.").

## III. THE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

Also pending before the court is plaintiff Ideal's April 11, 2006, Combined Motion And Brief For Default Judgment Against Defendant Rivard Instruments, Inc., As To Count I Of The Complaint (docket no. 30), which Rivard Instruments resisted on April 24, 2006 (docket no. 33). The court heard oral arguments on this motion in conjunction with the oral arguments on the defendants' motion to dismiss.

### A. Arguments Of The Parties

In its motion for default judgment, Ideal contends that Rivard Instruments has failed to plead or otherwise defend as to Count I of Ideal's Complaint, the count asserting infringement by Rivard Instruments of Ideal's '196 patent. Ideal contends that, pursuant to Rules 8(a) and 12(b), Rivard Instruments was required to defend as to each and every claim against it and that Rivard Instruments's failure to defend as to Count I constitutes an admission of the allegations in that count. Under the circumstances, where Rivard Instruments is in default in its answer to Count I, Ideal contends that the court should direct the Clerk of Court to enter Rivard Instruments's default pursuant to Rule 55(a), then enter default judgment pursuant to Rule 55(b)(2). Ideal argues that Rivard Instruments's partial motion to dismiss did not extend the time to respond to an unchallenged count, citing *Gerlach v. Michigan Bell Tel. Co.*, 448 F. Supp. 1168 (E.D. Mich 1978). In the alternative, Ideal seeks summary judgment against Rivard Instruments on Count I pursuant to Rule 56 on the ground that the allegations in that count against Rivard Instruments are admitted by operation of Rule 8(d), leaving no genuine issues of material fact for trial. Finally, Ideal contends that, at the very least, Rivard Instruments should be required to answer Count I immediately.

63

In response, Rivard Instruments asserts that Ideal's motion for default judgment is contrary to the majority rule, which is that a motion to dismiss pursuant to Rule 12, even a motion seeking dismissal of only some of the claims against a party, extends that party's time to answer as to the entirety of the opposing party's complaint. Indeed, Rivard Instruments asserts that Ideal is relying on a decision that is a "minority of one," as the *Gerlach* decision stands alone for the contrary position. Rivard Instruments also argues that an interpretation of Rules 8 and 12 as requiring "piecemeal" answers, when a defendant moves to dismiss only some of the claims against it, is contrary to public policy and judicial economy, as well as the greater weight of precedent. Therefore, Rivard Instruments seeks denial of Ideal's motion for default judgment.

## B. Analysis

### 1. The language of Rule 12(a)

Subdivisions (1) through (3) of Rule 12(a) of the Federal Rules of Civil Procedure require service of "an answer" or other responsive pleading by the party against whom a claim, cross-claim, or counterclaim is brought within certain time limits after service of "the summons and complaint," "cross-claim," or "counterclaim." FED. R. CIV. P. 12(a)(1)-(3). However, subdivision (4) provides as follows:

> (4) Unless a different time is fixed by court order, the service of a motion permitted under this rule alters these periods of time as follows:
>
>> (A) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 10 days after notice of the court's action; or
>>
>> (B) if the court grants a motion for a more definite statement, the responsive pleading shall be

> served within 10 days after the service of the more
> definite statement.

FED. R. CIV. P. 12(a)(4). Although neither the Rule nor the Advisory Committee Notes directly address whether time to answer is extended for unchallenged claims when a Rule 12(b) motion is filed as to only some claims, the court notes that the provisions of Rule 12(a) are cast in terms of "an answer" or "responsive pleading," as a whole, to a "complaint," "cross-claim," or "counterclaim," as a whole, not in terms of individual answers to separate counts or claims. *See* FED. R. CIV. P. 12(a). Thus, there is a strong implication from the language of Rule 12(a)(4) itself that the rule extends the time to answer the complaint, as a whole, when a Rule 12(b) motion to dismiss is filed, even if the Rule 12(b) motion does not challenge all of the claims asserted in the complaint.

### 2. *The interpretation on which Ideal relies*

Ideal is correct, however, that, nearly three decades ago, the court in *Gerlach v. Michigan Bell Telephone Company*, 448 F. Supp. 1168 (E.D. Mich. 1978), ruled that "[s]eparate counts are, by definition, independent bases for a lawsuit and the parties are responsible to proceed with litigation on those counts which are not challenged by a motion under F.R.C.P. 12(b)." *Gerlach*, 448 F. Supp. at 1174. In *Gerlach*, the defendant had challenged only four of the six counts of the complaint in a Rule 12(b) motion, but had failed to answer the two unchallenged counts, and the court found that the defendant was, therefore, technically in default as to the unchallenged counts. *Id.* Even so, the court found that the plaintiffs had not been "severely prejudiced" by the defendant's failure to answer those two counts. *Id.* Consequently, the court determined that the appropriate remedy was not the entry of default judgment pursuant to Rule 55(b), but an order directing the defendant to file an answer within ten days of the court's ruling, with the

further condition for such "belated" filing that the defendant pay the costs and attorney's fees incurred by the plaintiffs to bring their motion for default judgment. *Id.*

 3. *The interpretation by the majority of courts*

No other court has adopted the *Gerlach* court's reasoning or ruling; indeed, every court to consider the decision in *Gerlach* on this point has disagreed with and declined to follow it. *See Godlewski v. Affiliated Computer Servs., Inc.*, 210 F.R.D. 571, 572 (E.D. Va. 2002) (noting that *Gerlach* is the minority view, and rejecting its rationale to hold that, "[i]n the interests of efficiency for all parties, including the courts, it is best to stall the proceedings on all counts until after the court rules on the Rule 12(b)(6) motion"); *Tingley Sys., Inc. v. CSC Consulting, Inc.*, 152 F. Supp. 2d 95, 122 (D. Mass. 2001) (noting that "[s]ince the issuance of the *Gerlach* decision, no court has relied on its reasoning or followed its ruling," and also rejecting its reasoning); *Finnegan v. University of Rochester Med. Ctr.*, 180 F.R.D. 247, (W.D.N.Y. 1998) (rejecting the interpretation of Rule 12 in *Gerlach* and agreeing with cases reasoning that a Rule 12 motion extends the time to answer for all claims, including unchallenged claims); *see also Alex. Brown & Sons, Inc. v. Marine Midland Banks, Inc.*, 1997 WL 97837, * 7 (S.D.N.Y. 1997) (unpublished op.) (declining to follow *Gerlach* and, instead, following *Ricciuti, infra,* "[a]s a matter of policy and judicial economy"); *Circuit City Stores, Inc. v. Citgo Petroleum Corp.*, 1994 WL 483463, *4 (E.D. Pa. 1994) (unpublished op.) (rejecting *Gerlach* to hold that "[a] partial 12(b) motion enlarges the time to file an answer"); *Ricciuti v. New York Transit Auth.*, 1991 WL 221110, *2 (S.D.N.Y. 1991) (unpublished op.) (also rejecting *Gerlach*, because "[t]he language of Rule 12(a) indicates a contrary result," because the language providing for an extension of time to answer after the service of "a motion" under Rule 12 means that "*[a]ny* motion, particularly when the motion addresses a significant portion of the

complaint (as in the present case), will suspend the time to answer any claim") (emphasis in the original).

The decision most often cited for the contrary proposition is *Brocksopp Engineering, Inc. v. Bach-Simpson, Ltd.*, 136 F.R.D. 485 (E.D. Wis. 1991). The court in *Brocksopp Engineering* explained its reasons for rejecting the interpretation of Rule 12(a) in *Gerlach*, as follows:

> I decline to adopt the *Gerlach* court's interpretation of rule 12(a). By my reading of the rule's language, a partial 12(b) motion enlarges the time to file an answer. [The defendant] has 10 days after the court rules on its motion to dismiss to file an answer.
>
> I also agree with legal commentators who suggest that the *Gerlach* approach has significant disadvantages. It requires duplicative sets of pleadings in the event that the 12(b) motion is denied and causes confusion over the proper scope of discovery during the motion's pendency. 5A C. Wright and A. Miller, *Federal Practice and Procedure* § 1346 at p. 181 (1990).

*Brocksopp Eng'g, Inc.*, 136 F.R.D. at 486-87; *accord Ricciuti*, 1991 WL 221110 at *2 ("As a matter of policy and judicial economy such a conclusion [that a Rule 12 motion extends the time to answer as to all claims] is required. Were it necessary to serve an answer in piecemeal fashion, as *Gerlach* suggests, a procedural thicket would emerge. Thorny questions would arise as to how the case should proceed pending resolution of the motion."). For the reasons stated, the court in *Brocksopp Engineering* ruled that the defendant was not in default for failure to answer otherwise unchallenged claims, where the defendant had filed Rule 12(b) challenges to other claims. *Id.* at 487 (vacating the clerk's entry of default).

### 4. *This court's interpretation*

In addition to this court's view that the language of Rule 12(a) plainly contemplates that a Rule 12(b) motion will extend the time to answer as to all claims, even those not challenged in the Rule 12(b) motion, this court finds the reasoning of the courts rejecting *Gerlach* and embracing *Brocksopp Engineering* to be far more persuasive. In multi-claim litigation in which a party mounts a Rule 12(b) challenge to only some of the claims against it, it makes no sense to impose upon the parties some kind of "dual-track" litigation involving an answer and further proceedings on some claims, while other claims are subject to review on the motion to dismiss. The inefficiencies for both the parties and the court as well as the potential for confusion and unnecessary procedural convolutions posed by such "dual-track" litigation are obvious. *Brocksopp Eng'g, Inc.*, 136 F.R.D. at 486-87; *Ricciuti*, 1991 WL 221110 at *2. Therefore, this court also rejects the "piecemeal answer" rule proposed in *Gerlach* and holds that a motion pursuant to Rule 12(b), even one that challenges less than all of the claims asserted in the complaint or other pleading, extends the time to answer as to all claims in the pleading. It light of that holding, it is plain that Rivard Instruments is not in default as to Count I of Ideal's Complaint and that Ideal's motion for default judgment against Rivard Instruments as to Count I must be denied.

Moreover, Ideal has shown no prejudice that it has purportedly suffered as a result of Rivard Instruments's failure to answer Count I while the parties litigated the defendants' motion to dismiss as to other claims, and there will be no further delay to proceedings, as Rivard Instruments will now be required to answer the Complaint in its entirety within ten days of the filing of this ruling on its Rule 12(b) motion. *See* FED. R. CIV. P. 12(a)(4)(A). The absence of such prejudice is yet another reason to reject Ideal's motion for default

judgment, even under the *Gerlach* decision upon which Ideal relies. *See Gerlach*, 448 F. Supp. at 1174.

## IV. CONCLUSION

Upon the foregoing, the court finds persuasive only one of the defendants' many arguments for dismissal, and then only as to one of the six Counts in Ideal's Complaint. The court finds that it does not have supplemental jurisdiction over Ideal's claim for declaratory judgment of non-infringement of the Canadian patent in Count II, and even if it did, the court would decline to exercise supplemental jurisdiction over that claim. In addition, the court concludes that Rivard Instruments is not in default as to Count I, because Rivard Instruments's Rule 12(b) challenges to the other Counts in Ideal's Complaint extended Rivard Instruments's time to answer *all* of the Counts in that Complaint.

THEREFORE,

1.      The defendants' February 14, 2006, Motion To Dismiss (docket no. 13) is granted as to Count II of Ideal's Complaint, but otherwise denied. Count II is dismissed without prejudice for lack of supplemental jurisdiction.

2.      Plaintiff Ideal's April 11, 2006, Combined Motion And Brief For Default Judgment Against Defendant Rivard Instruments, Inc., As To Count I Of The Complaint (docket no. 30) is denied.

IT IS SO ORDERED.

DATED this 8th day of May, 2006.

_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA