**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

_____

)
**IDEAL INSTRUMENTS, INC.,**                )
a Michigan corporation,                      )
                                             )
            Plaintiff,                       )        Case No. 3:05-cv-3079
                                             )
vs.                                          )        HON. MARK W. BENNETT
                                             )
**RIVARD INSTRUMENTS, INC.,**                )
a foreign corporation, and                   )
**MERIL RIVARD**, a foreign national,        )
                                             )
            Defendants.                      )
_____)

**PLAINTIFF IDEAL'S COMBINED MOTION AND BRIEF IN SUPPORT
OF MOTION FOR SANCTIONS AGAINST DEFENDANTS
AND THEIR ATTORNEYS PURSUANT TO F. R. CIV. P. 11,
28 U.S.C. § 1927, AND/OR THIS COURT'S INHERENT AUTHORITY**

## TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................ii

INTRODUCTION .......................................................................................... 1

STATEMENT OF FACTS ............................................................................... 7

    I.      RIVARD'S DELAY IN FILING THE MOTION.................................7

    II.     RIVARD'S REFUSAL TO WITHDRAW ITS MOTION EVEN AFTER ITS EXPERT
          ADMITTED THE D3 NEEDLES WERE DETECTABLE......................................8

    III.    RIVARD'S ELEVENTH-HOUR 304 ARGUMENT WAS FRIVOLOUS AND
          DISINGENUOUS .......................................................................9

    IV.    RIVARD'S FAILURE TO OFFER ANY ADMISSIBLE EVIDENCE IN SUPPORT OF
          ITS MOTION FOR INJUNCTIVE RELIEF ....................................10

LAW & ARGUMENT...................................................................................... 12

    I.      RULE 11 SANCTIONS SHOULD BE IMPOSED AGAINST RIVARD AND ITS
          COUNSEL ...............................................................................12

    II.     Rivard's Counsel Should Be Sanctioned Under Section 1927...............................16

    III.    SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY ARE ALSO
          WARRANTED ..........................................................................17

CONCLUSION AND RELIEF REQUESTED ...................................................... 19

# INDEX OF AUTHORITIES

Cases

*Andretti v. Borla Performance Industries, Inc.*, 426 F.3d 824 (6th Cir. 2005) ................................... 16

*Antonious v. Spalding & Evenflo Co, Inc.*, 275 F.3d 1066 (Fed. Cir. 2002) ...................................... 15

*Bates v. 84 Lumber Co., L.P.*, 205 Fed.Appx. 317, 2006 WL 2660728 at *4 (6th Cir. 2006 (unpublished) .................................................................................................................................... 17

*Campbell Soup Company, Inc. v Giles*, 47 F.3d 467, 470 (1st Cir. 1995)...................................... 11

*Chambers v. NASCO, Inc.*, 501 U.S. 32, (1991)................................................................. 13, 17, 18

*Chandler v. Norwest Bank Minnesota*, 137 F.3d 1053 .................................................................... 14

*Chrysler Corp. v. Cary*, 186 F.3d 1016 (8th Cir. 1999) .................................................................. 18

*Cooter & Gell v. Hatmarx Corp.*, 496 U.S. 384 (1990) ........................................................... 14, 15

*Devereaux v. Colvin*, 844 F. Supp. 1508 (M.D. Fla. 1994) ...................................................... 12, 14

*Dillon v. Nissan Motor Corp.*, 986 F.2d 263 (8th Cir. 1993) ......................................................... 18

*Edwards v. G.M. Corp.*, 153 F.3d 242 (5th Cir. 1998) ............................................................. 13, 16

*Elliott v. Kiesewetter*, 98 F.3d 47 (3rd Cir. 1996)......................................................................... 11

*F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co., Inc.*, 417 U.S. 116 (1974) .............. 17

*Greiner v. City of Champlin*, 152 F.3d 787 (8th Cir. 1998) ........................................................... 18

*Harlan v. Lewis*, 982 F.2d 1255 (8th Cir. 1993)............................................................................ 18

*Hubbard Feeds v. Animal Feed Supplement*, 182 F.3d 598 (8th Cir. 1999) ..................................... 7

*Jones v. United Parcel Service, Inc.*, 460 F.3d 1004 (8th Cir. 2006) ....................................... 14, 17

*Lamb Eng. & Construction Co. v. Nebraska Public Power District*, 103 F.3d 1422 (8th Cir. 1997) ................................................................................................. 19

*Landscape Properties, Inc. v. Whisenhunt*, 127 F.3d 678, 682 (8th Cir. 1997) ............................. 14

*McDonald's Corp. v Robertson*, 147 F.3d 1301 (11th Cir. 1998) .................................................. 11

*Medeco Security Locks, Inc. v. Swiderek*, 680 F.2d 37, 38 (7th Cir. 1981)...................................... 11

*Nassua Boulevard Shell Station, Inc. v. Shell Oil Co.*, 869 F.2d 23 (2nd Cir. 1989) ........................ 8

*Oliveri v. Thompson*, 803 F.2d 1265 (2d Cir. 1986)...................................................................... 13

*Orange Prod. Credit Ass'n v. Frontline Ventures, Ltd*, 792 F.2d 797 (9th Cir. 1986)................... 13

*Pro Edge, L.P. v. Gue*, 374 F.Supp.2d 711 (N.D. Iowa 2005) ........................................................ 7

*Roger Edwards, L.L.C. v. Fiddes & Son, Ltd.*, 227 F.R.D. 19 (1st Cir. 2006)............................... 13

*S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372 (Fed. Cir. 1996) ......................... 15

*Sequa Corp. v. Gelmin*, 1995 WL 404726 (S.D.N.Y. 1995) ............................................................ 8

*Stevenson v. Union Pacific RR*, 354 F.3d 739 (8th Cir. 2003) ....................................................... 18

*Super Power Supply, Inc. v. Macase Indus. Corp.*, 154 F.R.D. 249 (C.D.Cal. 1994)................... 14

*Ty, Inc. v GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997)........................................ 11

*United Healthcare Ins. Co. v. Advance PCS*, 316 F.3d 737 (8th Cir. 2002) .................................. 11

*Willhite v. Collins*, 459 F.3d 866 (8th Cir. 2006) .......................................................................... 18

*Zaldivar v. City of Los Angeles*, 780 F.2d 823 (9th Cir. 1986) ...................................................... 14

Rules

F. R.Civ.P. 11............................................................................................. 1, 12, 14, 17, 19,

Statutes

28 U.S.C. § 1927........................................................................................................... 1, 2, 15

## INTRODUCTION

Pursuant to F. R. Civ. P. 11, 28 U.S.C. § 1927, and/or this Court's inherent authority, Plaintiff Ideal Instruments, Inc. ("Ideal") seeks an order imposing monetary sanctions against Defendant Rivard Instruments, Inc. ("Rivard") and its attorneys in connection with the "frivolous" and "vexatious" motion for preliminary injunction in which they alleged that Ideal's advertising of its D3 Needles as "detectable" posed "a serious threat to the public health and safety." Rivard and its counsel embarked on this wasteful exercise not out of any concern for the public, as they contended, but as part of an ongoing effort to ensure that this litigation is as expensive and punishing as possible for Ideal. As to that objective, Rivard has achieved remarkable success. In addition to the initial sanctionable conduct in filing its frivolous motion for preliminary injunction, there were numerous instances ("red flags") between October 2006 and March 2007 when it was readily apparent to any objective litigant and lawyer that the motion was bereft of merit. Yet, rather than withdraw the motion and mitigate the problem, they stubbornly persisted in plowing ahead and exacerbating the problem. Given the facts and circumstances surrounding Rivard's ill-conceived filing and misguided maintenance of the motion for preliminary injunction, it is unfair for Ideal to be forced to suffer the enormous amount of attorney fees and costs it incurred successfully defending against it.[1]

On October 27, 2006, Rivard filed its motion for preliminary injunction – *and sought "expedited relief . . . on the earliest date available to the Court"* – arguing that Ideal's D3 needles "are not detectable as understood in the detectable hypodermic needle and meat processing industries." (Rivard's Motion, ¶ 6.) Rivard's motion was predicated upon its belated

---

[1] As Ideal noted in its brief in opposition to the motion, "Defendants' focus on their false advertising counterclaim and motion for preliminary injunction, while groundless and devoid of merit, has become an extremely expensive and distracting sideshow." (Opp. Brief., p. 2.) In its Opinion denying Rivard's motion, this Court accurately captured Ideal's frustration, noting that Ideal "contends that the motion for a preliminary injunction is a frivolous distraction from the real patent infringement issues in the case." (Opinion, -- F.Supp.2d --, 2007 WL 915174 at *1.)

1

counterclaim for false advertising, pleaded almost entirely "upon information and belief." (Rivard's Eighth Counterclaim, ¶¶ 66-70.)   In the first sentence of its brief in support of is motion, Rivard claimed that the injunction was sought "based upon a serious threat to the public health and safety created by Plaintiff Ideal Instruments, Inc."[2]   Rivard's motion was based solely on the unreliable test results from its purported expert, Professor Steven Hoff – but the motion and expert report both conspicuously omitted to mention that Hoff had previously tested Ideal's D3 Needles in 2002 and 2006 and declared them "clearly 100% detectable."[3]

On October 30, 2006, Ideal's counsel sent a *first* "warning shot"[4] to Rivard's counsel, advising them that their "motion for a preliminary injunction would appear to raise the specter of Rule 11 and 28 U.S.C. § 1927." (Exhibit 1.)   Undeterred, Rivard and its counsel proceeded with its motion.   Consequently, Ideal was constrained to depose Rivard's expert (ultimately three separate times at some considerable expense because Rivard and Hoff systematically and continually withheld numerous documents which undermine their detectability contentions).

On November 14, 2006, following Hoff's initial deposition, Ideal's counsel sent Rivard's counsel a *second* "warning shot" in the form of a Rule 11 letter and draft Rule 11 motion:

> [B]ased upon the documents you finally produced just last week – after wrongfully withholding them for months in an effort to sandbag us – and based upon the shocking deposition testimony and admissions of your "expert," Steven Hoff, it is now clear that Defendants and their counsel knew that his "tests" were rigged, had no statistical validity whatsoever, were a complete farce, and that his affidavit – of which every word Defendants' counsel wrote – was false and admittedly false in

---

[2]  In its motion, Rivard also erroneously alleged that an injunction against Ideal's D3 Needles was sought because of "a risk to public safety" and that "expedited consideration and relief" was sought "[i]n light of the substantial risk to the public safety as a result of Plaintiff's actions."   (Rivard's motion, ¶¶ 8-10.)

[3]  Rivard intended to argue that the D3 Needles are not detectable since they are made from duplex stainless steel – a duplicitous argument since Rivard was forced to admit in deposition that it had recently begun making detectable needles from duplex stainless steel.  (Opp. Brief, Ex. 1, RII dep., pp. 51-52).  A few months later, in February 2007, Rivard filed a Third Motion to Supplement Motion for Preliminary Injunction, alleging for the first time that some D3 Needles are not detectable because some of them were made from 304 stainless steel – another duplicitous argument since Rivard had known for at least five months that 304 stainless steel alloy had been used for some D3 Needles and Rivard itself had also used 304 stainless steel for some of its detectable needles.

[4]  Some courts use the term "warning shot" to describe an intended Rule 11 motion sent pursuant to Rule 11(c)(1)(a).

some respects.  (Even assuming *arguendo* that you were duped by Steven Hoff, **based on his deposition testimony last Friday, Defendants and their counsel can no longer, consistent with their Rule 11 and ethical obligations, maintain their motion for preliminary injunction or the allegations in their amended counterclaim concerning the detectability of the D3**.)  Frankly, it now seems painfully obvious to us that Defendants and their counsel filed with the Court their motion for preliminary injunction based on the false affidavit and phony expert report of Steven Hoff in a deliberate attempt to perpetrate a fraud on the Court with the objective of destroying Ideal's D3 business.  We are fully aware that Mr. Rivard brags about enjoying litigation and that he considers it a sport.  This, however, is no excuse for his counsel filing such groundless pleadings and motions.

> **Therefore, we urge you and your clients in the strongest possible terms to carefully consider whether, consistent with your respective obligations under Rule 11, 28 U.S.C. § 1927, and the Rules of Professional Conduct,[5] you and your clients can legitimately and in good faith maintain your motion for preliminary injunction and the allegations in the amended counterclaim concerning detectability**.

(Exhibits 2, emphasis added.)[6]

On December 9, 2006, following the first court-ordered re-deposition of Hoff, Ideal's counsel sent a *third* "warning shot" to Rivard's counsel explaining that, given Hoff's "many startling, if not fatal, admissions" in his latest deposition testimony, Ideal's "intended Rule 11 motion . . . became even stronger today."  Therefore, Rivard's counsel was advised: **"Your 21-day safe harbor under Rule 11 has now passed.  However, you still have the opportunity to mitigate the amount of fees and expenses that you may ultimately be ordered to pay by withdrawing your motion for preliminary injunction."**  (Ex. 4, emphasis added.)

Despite these repeated "warning shots" and the opportunity to avail itself of the "Safe Harbor" provision of Rule 11 and escape the possibility of sanctions, Rivard and its counsel persisted in with a vengeance in pursuing the preliminary injunction motion.  Eventually, five months, four supplemental filings, multiple motions to compel discovery by Ideal, ever-changing bases for the motion, two expert reports from Rivard's expert, two Court-ordered re-depositions

---

[6] Ideal's draft Rule 11 motion sent that day, which is incorporated by reference herein, is attached as Exhibit 3.

of Rivard's expert, a scheduled two-day evidentiary hearing without a single witness called by

Rivard, substantial amounts of attorney fees and costs, and undoubtedly countless hours of

wasted judicial resources later, on March 28, 2007, this Court denied Rivard's motion, holding

that "[*n]one* **of the '*Dataphase* factors' weighs in favor of the preliminary injunctive relief**

**that Rivard seeks.**"  (Opinion,-- F.Supp.2d --, 2007 WL 915174 at *17, emphasis added.)

In its 42-page published Opinion, this Court also held the, given the absence of evidence,

Rivard "has little or no likelihood of success on such a claim":

> Thus, on the present record, **the court finds that Rivard has *little or no***
> ***chance* of proving the "literal falsity" element of its "false advertising" claim**
> under § 43(a) of the Lanham Act. *Allsup, Inc.,* 428 F.3d at 1138 (the first element
> of a § 43(a) "false advertising" claim is proof that the defendant made false
> statements about its own product).
>
> *iii. Other elements.* **For much the same reason that Rivard has *little or***
> ***no chance* of proving a false statement by Ideal, Rivard has little or no**
> **chance of proving that Ideal's statements that its D3 needles are "detectable"**
> **actually deceived or had the tendency to deceive a substantial segment of its**
> **audience,** *see id.* (second element), **or injured Rivard**, *see id.* (fifth element),
> even assuming that the statements were material, and caused by Ideal to enter
> interstate commerce. *See id.* (third and fourth elements). Again, there is ***no***
> ***evidence* of a single reported incident of a D3 needle breaking, passing**
> **undetected through a metal detector, and finding its way into a consumer's**
> **food, so that no one has been misled, deceived, or otherwise harmed by**
> **Ideal's marketing of its D3 needles as "detectable,"** *nor is there any evidence*
> **that anyone has been physically injured by the failure of a D3 needle to be**
> **detected**. *See id.* ("deception" element). That being so, there is also *no evidence*
> that Rivard has been injured by any alleged misrepresentation of the
> "detectability" of Ideal's D3 needles. *See id.* ("injury to claimant" element).
>
> In short, ***the lack of any convincing evidence* on three of the five**
> **elements of Rivard's "false advertising" claim-false representation,**
> **deception, and injury to claimant-means that Rivard *has little or no***
> ***likelihood of success on such a claim* under governing law,** and such limited
> likelihood of success clearly does not support the sweeping preliminary injunctive
> relief Rivard seeks.

*Id*. at *17 (emphasis added.)

Rivard filed its motion knowing that Ideal had sold millions of D3 Needles without a

single incident of a needle breaking off in an animal, escaping metal detection, and ending up in

a consumer's product.  When it filed its motion, Rivard knew that its own expert – upon whom it was exclusively relying to support its motion – had previously tested and determined Ideal's D3 Needles to be "clearly 100% detectable," a material fact Rivard failed to disclose to this Court. Moreover, Rivard refused to withdraw its motion after its expert, Hoff, admitted that: 1) D3 Needles are detectable, including those made from 304 stainless steel (which was confirmed by Hoff's testing in combination with metallurgical reports)[7]; 2) his affidavit contained false and misleading statements; 3) his test procedures used for the D3 Needles as Rivard's expert bore no resemblance to his independent testing of D3 Needles or field conditions; 4) his new test procedures developed for litigation failed to produce statistically significant results and would not pass a peer review; and 5) his tests for Rivard demonstrated that the D3 needles were detectable in every instance.  Given these facts, this Court had little difficulty concluding that **"Dr. Hoff's testing in October 2006 has *no probative value whatsoever* concerning the "detectability" of Ideal's D3 needles within the meaning of the livestock and meat processing industries owing to the flawed procedures that bore no relationship to industry conditions or the conditions of prior tests commissioned by the NPB."**  (Opinion, -- F.Supp.2d --, 2007 WL 915174 at *5, emphasis added.)

Rivard's motion for preliminary injunction sought to enjoin Ideal from selling its D3 Needles, require Ideal to recall its D3 Needles and to send notices to its customers.  Rivard's motion was filed with this Court without reasonable inquiry, and in bad faith for improper and oppressive purposes.  There was not at the time it was filed nor any time thereafter any credible evidence to support the motion or the relief sought therein.  The motion contained allegations that Rivard and its counsel knew or should have known were meritless and erroneous – all of which have unreasonably and vexatiously multiplied these proceedings and unfairly caused Ideal to incur substantial costs and

---

[7] The metallurgy tests showed the D3 needles tested by Hoff made from 304 stainless steel were 100% detectable.

attorneys fees for no good reason.  Rivard's motion is sanctionable under Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority.  Monetary sanctions are required to ameliorate the prejudice suffered by Ideal and to deter further such conduct by Rivard and to deter others from engaging in similar conduct in the future.

It is telling that Rivard, a Canadian corporation owed entirely by a Canadian citizen, Meril Rivard, never filed a motion for injunctive relief in the Canadian Federal Court where it sued Ideal in 2004 – more than a year and half before this instant lawsuit was filed – for allegedly infringing its Canadian patent by selling D3 Needles in Canada.  Surely, Rivard could not have believed the D3 Needles posed a "serious threat to the public health and safety" to consumers in the United States but not in Canada.  One could certainly view this as evidencing a cynicism.

At nearly every step leading to the Court hearing, the facts continued to make even clearer that Rivard's motion was devoid of merit.  However, Rivard continued to escalate the matter, which resulted in substantially escalating the cost to Ideal of defending against the motion.  It should also be noted that on March 29, 2007, the day after this Court issued its Opinion and Order denying the motion for preliminary injunction, pursuant to L.R. 7.1(l), Ideal's counsel sent a letter to Rivard's counsel, seeking concurrence in resolving the issue of costs and attorney fees incurred on an out-of-court basis, inquiring "whether Defendants and/or their counsel will agree to reimburse Plaintiff Ideal a reasonable amount of attorney fees and costs incurred in connection with the motion for preliminary injunction."  (Ex. 5.)  On April 9, 2007, Rivard's counsel indicated additional time was needed to consult with Mr. Rivard, who was on vacation, and a response would be provided by the end of the week.  (Ex. 6.)  On April 13, 2007, Rivard's counsel indicated that they would not agree to pay any amount of attorney fees or costs, and further indicated they planned to continue pursuing their false advertising detectability counterclaim.  (Ex. 7.)

## STATEMENT OF FACTS

In view of the amount of paper filed with this Court relating to Rivard's Motion for Preliminary Injunction, the evidence to which the parties stipulated at the March 12, 2007 hearing, and the Opinion and Order of March 28, 2007, this Court is intimately familiar with the facts and "evidence" related to Rivard's injunctive motion.   Accordingly, a full and lengthy recitation of the facts is unnecessary.   As to the timeline and relevant facts not otherwise discussed herein, Ideal would refer the Court to its Brief in Opposition to Motion for Preliminary Injunction, the stipulated evidence, and the Court's Opinion and Order of March 28, 2007.

## I.      RIVARD'S DELAY IN FILING THE MOTION.

In denying the motion, this Court found it unnecessary to reach the issue of Rivard's lengthy delay in filing the motion and underlying counterclaim.   However, for purposes of this motion for sanctions, Rivard's delay is one of several indicia of its improper  purpose.   As early as December 2, 2004, Rivard publicly maintained that Ideal's D3 Needles were not sufficiently detectable.[8]   Yet, Rivard did not file its motion for preliminary injunction until October 30, 2006, **nearly two (2) years later**.   Rivard also waited nearly ten (10) months after being served with this patent infringement lawsuit to file its motion "seeking to restrain Plaintiff Ideal from . . . marketing [its D3] needles as 'detectable.'"  (Rivard's motion, ¶ 7.)  A delay in filing a claim or motion for injunctive relief nullifies any allegation of irreparable harm and generally results in the denial of a preliminary injunction.  See, e.g., *Pro Edge, L.P. v. Gue*, 374 F.Supp.2d 711, 749 (N.D. Iowa 2005) (Bennett, J.) ("a movant's delay in seeking relief or objecting to the actions the movant seeks to enjoin 'belies any claim of irreparable injury pending trial.'") (quoting *Hubbard Feeds v. Animal Feed Supplement*, 182 F.3d 598, 603 (8th Cir. 1999).

---

[8] See Opp. Brief, Ex. 5, § II.D.iii, attached thereto.

It seems obvious that, had Ideal not filed the instant patent infringement action against it, Rivard never would have brought any false advertising claim, let alone a motion for preliminary injunction based on such an allegation.  Indeed, Rivard's lengthy delay not only belies its feigned concern for the American public, but demonstrates it filed the motion for improper purposes.  As some courts have observed, "delay [in filing injunctive motions] may reflect tactical maneuvering by the movant with the goal of maximizing the burden on his adversary."  *Sequa Corp. v. Gelmin*, 1995 WL 404726 n.7 (S.D.N.Y. 1995), citing *Nassua Boulevard Shell Station, Inc. v. Shell Oil Co*., 869 F.2d 23, 24 (2nd Cir. 1989) ("delay tactic" in seeking an injunction is "inequitable" to the non-movant and the court).

## II.  RIVARD'S REFUSAL TO WITHDRAW ITS MOTION EVEN AFTER ITS EXPERT ADMITTED THE D3 NEEDLES WERE DETECTABLE.

Once Rivard's expert's testing was shown to be devoid of any evidentiary value, rather than withdraw its motion, Rivard's counsel compounded the problem by assisting the expert in writing a new "supplemental" report.  On December 9, 2007, when he was re-deposed as to his new report (pursuant to Court order), Hoff admitted that Ideal's D3 needles are detectable.

Q.    My question was, **the D3 needle is detectable.  Correct**?

A.    **Yes, the evidence would support that here**.

(Opp. Brief, Ex. 10 thereto, Hoff dep., p. 111, emphasis added.)

Yet, Rivard still refused to withdraw its preliminary injunction motion.  Undeterred and unwilling to let facts get in the way of its litigation strategy, Rivard and its counsel pushed on with their motion.[9]  As a result of continually dribbling out highly relevant documents after

---

[9] Rivard's lead counsel, Terence Linn, did not attend Hoff's December 10, 2006 deposition, but two other lawyers from his firm attended.  When the deposition transcript became available, Ideal's counsel, Toni Harris, informed Mr. Linn telephonically of Hoff's fatal admissions, and inquired whether Rivard would now withdraw the motion.  At that time, Mr. Linn made an initial, noncommittal inquiry about withdrawing the motion if Ideal would agree to not seek costs and fees.  Ideal declined to forego its already incurred substantial costs and fees, but stressed that withdrawing the motion would mitigate its potential exposure.  (Ex. 8.)

Hoff's first re-deposition, this Court ordered Rivard to produce Hoff for a second re-deposition.

During Hoff's second re-deposition on February 1, 2007, he reiterated that Ideal's D3 needles are

detectable (and further admitted that 304 stainless steel needles are detectable):

> Q.    Did you speak with Mr. Ondersma [one of Defendants' attorneys] at all
> about your testimony from prior depositions or your testimony that
> would be given in today's deposition?
>
> A.    Well, the last deposition came up in a conversation, and I guess what I had
> said in that statement is that, you know, my testimony was that – the specific
> thing I remember anyway is that I said, you know, **I was specifically asked
> if the Ideal needles were detectable, and I said "yes."**

(Ideal's Opposition Brief, Ex. 12 thereto, Hoff dep., p. 7, emphasis added.)

Equally important, in its Rule 30(b)(6) deposition, Rivard conceded that "detectable,"

indeed "sufficiently detectable," means a needle detected and rejected on a consistent basis:

> Q.    . . . **If on a consistent basis a particular type of needle is detected and
> rejected, that means that needle is detectable.  Correct?**
>
> A.    **Correct.**
>
> Q.    Okay.  And so **sufficiently detectable** to [RII] means that it's been detected
> and rejected?
>
> A.    On a consistent basis, **yes**.

(Opp. Brief, Ex. 1, RII dep., p. 49, emphasis added.)

Undaunted and unfazed by these fatal admissions, Rivard and its counsel still stubbornly

refused to withdraw its motion.

### III.   RIVARD'S ELEVENTH-HOUR 304 ARGUMENT WAS FRIVOLOUS AND DISINGENUOUS.

When it became apparent that its expert would be of no help, Rivard belatedly altered the

basis for its injunctive motion.  On February 1, 2007 – three (3) months after filing its motion for

preliminary injunction and five (5) months after it first knew that some D3 Needles were made

from 304 stainless steel – Rivard filed its *Third* Motion to Supplement Motion for Preliminary

Injunction, advancing a brand new theory, i.e., alleging that some of Ideal's needles were not sufficiently detectable because they were made from 304 stainless steel – the same stainless steel alloy used to manufacture some of Rivard's own "detectable" needles.[10]

Ironically, as this Court observed, if Rivard had been successful under this theory, "then it would follow that Rivard's similar problems would justify the same relief as to its products." (Opinion, -- F.Supp.2d --, 2007 WL 915174 at n. 3.)   Advancing this new argument was thoroughly disingenuous because "Dr. Hoff has admitted that needles made from type 304 stainless steel are detectable, and metallurgy tests reveal that Rivard also makes or made some of its 'detectable' needles from type 304 stainless steel." *Id*. at *9, emphasis added.)[11]

## IV.   RIVARD'S FAILURE TO OFFER ANY ADMISSIBLE EVIDENCE IN SUPPORT OF ITS MOTION FOR INJUNCTIVE RELIEF.

As the hearing date on the motion approached, Ideal's counsel repeatedly requested to know whether Hoff, Mr. Rivard, or other witnesses would appear during the two-day evidentiary hearing scheduled for March 12-13, 2007.  (Ex. 9.)  Ideal's counsel wanted to know what witnesses Rivard planned to call or have available so as to prepare for cross-examination of those witnesses and to decide which witnesses it might call during the hearing.   Rivard's counsel indicated they would disclose their witnesses, and Ideal's counsel agreed to advise Rivard's counsel of its witnesses once it knew who Rivard's witnesses would be.  (Ex. 10.)  Although Ideal expressly requested that Hoff

---

[10] On September 6, 2006, Rivard produced a document to Ideal stating that D3 Needles are made from "304 Stainless Steel with Iron Alloy Added for Detectability," and Rivard actually attached that document in support of its motion for preliminary injunction.  (Opp. Brief, Exs. 15 and 4.)  Yet, Rivard pretended that it just learned this information and tried to blame Ideal for not telling it something it already acknowledged it knew.

[11] Rivard's contention that it recalled its 304 stainless steel needles was misleading.  Rivard recalled only a limited number based on bending/breakage problems, not detectability problems.  Rivard not only continued to provide 304 needles to its largest customer, it sold those 304 needles to that customer on a 3-for-1 basis.  Rivard's suggestion that Ideal had recalled some D3 needles in the past due to detectability issues was equally misleading.  Ideal's recall had nothing to do with detectability issues, but a needle/hub swedging problem.

be present at the court hearing, Rivard's counsel advised Ideal's counsel that Hoff would not be present at the court hearing due a scheduling conflict that could not be changed.[12] (Ex. 11.)

Since Rivard's counsel had promised to provide a witness list in advance of the court hearing, when no list was provided, Ideal's counsel was left to wonder whether Rivard planned to not call any witnesses. Ideal was perplexed as to how Rivard expected to have any evidence admitted during the evidentiary hearing without calling any witnesses. Thus, Ideal's counsel prepared a "Bench Memo Regarding Evidentiary Hearing for Issuance of Preliminary Injunction" setting forth well-settled law that "[w]hen 'a material factual controversy exists,' an evidentiary hearing is required prior to issuing a preliminary injunction." *United Healthcare Ins. Co. v. Advance PCS,* 316 F.3d 737, 744 (8th Cir. 2002)."[13] (Ex. 12.) That Bench Memo also stated that, "to the extent that factual issues exist, an evidentiary hearing should be conducted and Defendants should be required to put on admissible proofs subject to cross-examination.." (Ex. 12.) Ideal's counsel brought that Bench Memo to the Court hearing in case Rivard's counsel tried to simply obtain a preliminary injunction based on oral argument and affidavits.[14] Although Ideal's counsel advised the Court of the Bench Memo and showed it to Rivard's counsel, it was never filed because, ultimately, in an effort to move the matter toward resolution in as expeditious a manner possible, Ideal stipulated to many of Rivard's proposed exhibits for purposes of that motion.

---

[12] During his second re-deposition in February 2007, Hoff testified had no plans to testify at the court hearing, and Rivard's counsel later indicated that Hoff could not attend due to a scheduling conflict. Thus, it came a complete surprise when, at the court hearing, Rivard's counsel suddenly indicated that Hoff could drive to court and be present within a couple of hours. Rivard's counsel also suggested that its metallurgy expert could be available to testify telephonically that some D3 Needles were made from a 304 stainless steel alloy – something not in dispute.

[13] The Bench Memo also cited cases from other circuits in accord with the requirement of a evidentiary hearing: *McDonald's Corp. v Robertson,* 147 F.3d 1301 (11th Cir. 1998); *Elliott v. Kiesewetter,* 98 F.3d 47 (3rd Cir. 1996); *Ty, Inc. v GMA Accessories, Inc.,* 132 F.3d 1167, 1171 (7th Cir. 1997) (citing *Medeco Security Locks, Inc. v. Swiderek,* 680 F.2d 37, 38 (7th Cir. 1981); *Campbell Soup Company, Inc. v Giles,* 47 F.3d 467, 470 (1st Cir. 1995).

[14] At the hearing, Rivard's counsel did indeed contend that the affidavits attached to Rivard's various briefs were admissible – a contention squarely rejected by this Court as "inadmissible hearsay." Prophetically, Ideal's Bench Memo cited *Campbell Soup Company, Inc. v Giles,* 47 F.3d 467, 470 (1st Cir. 1995), quoting *SEC v Frank,* 388 F.2d 486, 491 (2nd Cir. 1968), for the proposition that "'when the parties' competing versions of the of the pertinent

It is rather amazing that Rivard would file a motion for a preliminary injunction seeking to put Ideal out of the detectable needle business, file a brief in support, file three supplements in support, file a reply brief in support, engage in numerous depositions related to the injunction motion (e.g., Messrs. Herbert and Bohannon of Ideal, Ms. Cepanec for Rivard, and Professor Hoff), propound interrogatories and document requests – and then show up for a two-day evidentiary hearing with three lawyers, but not a single witness.  With reasonable inquiry – indeed, any inquiry – Rivard's counsel knew or should have known an evidentiary hearing was required.  Frankly, there was no reason for Ideal's counsel to travel (at considerable expense in terms of costs and attorney fees) to attend the court hearing.  If all Rivard really wanted to do was orally argue its motion, it could have been done telephonically, which would have saved Ideal thousands of dollars and three days of time.  Rivard's approach also resulted "in distracting the court's attention away from other important matters and caused the court to squander a considerable amount of time focusing on this frivolous motion."  *Devereaux v. Colvin*, 844 F. Supp. 1508, 1507-08 (M.D. Fla. 1994)

## **LAW & ARGUMENT**

### I.   **RULE 11 SANCTIONS SHOULD BE IMPOSED AGAINST RIVARD AND ITS COUNSEL.**

F. R. Civ. P. 11(b) provides:

> REPRESENTATIONS TO COURT.  By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, -
>
> (1)  it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2)  the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

---

factual events are in sharp dispute, such that the propriety of injunctive relief hinges on determinations of credibility, the inappropriateness of proceeding on affidavits [alone] attains its maximum.'"  (Ex. 12.)

(3)  the allegations and other factual contentions have <u>evidentiary support</u> or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

(Emphasis added.)

Furthermore, the amount of sanctions under Rule 11 must be to sufficient to serve as a deterrent.  Rule 11(c)(2) provides:

NATURE OF SANCTION; LIMITATIONS.  A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.  Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of **some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation**.

(Emphasis added.)

The test for whether conduct violates Rule 11 is an "objective standard of reasonable inquiry" and does <u>not</u> require a finding of bad faith.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991).  See also *Orange Prod. Credit Ass'n  v. Frontline Ventures, Ltd*, 792 F.2d 797, 800 (9th Cir. 1986) (bad faith not necessary to impose Rule 11 sanctions).  "[T]here is no necessary subjective component to a proper Rule 11 analysis . . . **sanctions shall be imposed when it appears that a competent attorney could not form the requisite reasonable belief as to the validity of what is asserted in the paper**."  *Oliveri v. Thompson*, 803 F.2d 1265, 1275 (2d Cir. 1986) (Emphasis added.)[15]  Rule 11 sanctions are warranted "when a pleading which has been filed is frivolous, legally unreasonable, or without factual foundation." *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir. 1986); accord *Cooter & Gell v. Hatmarx Corp.*, 496 U.S. 384, 393 (1990).  Where conduct is unreasonable under the circumstances, Rule 11 sanctions are mandated. Rule 11 also

---

[15] See, e.g., *Roger Edwards, L.L.C. v. Fiddes & Son, Ltd.*, 227 F.R.D. 19, 22-23 (1st Cir. 2006) ("some degree of fault is required, but the fault need not be a wicked or subjectively reckless state of mind; rather, an individual 'must, at the very least, be culpably careless to commit a violation.'")

directs trial courts to impose sanctions against an attorney or a litigant who signs, files, submits or later advocates frivolous pleadings, papers or motions.[16]

Even when a litigant files a claim with a reasonable belief that it has or us likely to have evidentiary support, when the party does not conduct the inquiry necessary to support the claim and fails to produce evidence in support of their claims, Rule 11 sanctions are warranted.  See *Chandler v. Norwest Bank Minnesota*, 137 F.3d 1053, 1057 (8th Cir. 1998).  See also *Jones v. United Parcel Service, Inc.*, 460 F.3d 1004, 1010 (8th Cir. 2006) (upholding district court's imposition of sanctions where the court found that plaintiff's subjective motivation was solely to cause unnecessary delay and needlessly increase the cost of litigation as evidenced by, *inter alia*,  instances in which the plaintiff attempted to dispute claims and evidence which were supported by deposition testimony of its own witnesses); *Devereaux, supra,* 844 F. Supp. at 1507-08) (imposing Rule 11 sanctions on plaintiff and his counsel for preliminary injunction motion that was "objectively frivolous" and "only succeeded in distracting the court's attention away from other important matters and caused the Court to squander a considerable amount of time focusing on this frivolous motion.")

In *Super Power Supply, Inc. v. Macase Indus. Corp*., 154 F.R.D. 249 (C.D.Cal. 1994), the district court denied the plaintiff's motion for preliminary injunction and imposed sanctions against the plaintiff's counsel.  This case is instructive for more than one reason.  First, in imposing sanctions, the district court explained that, as with the instant case, a reasonable investigation would have revealed little basis to file a motion for preliminary injunction:

> The conduct of plaintiff's counsel in this case violates both the spirit and the letter of Fed.R.Civ.P. 11, not to mention the terms of 28 U.S.C. § 1927. Sanctions are therefore appropriate because (i) **Mr. Hwu should have known after a reasonable investigation of the facts that he had little cause to seek a preliminary injunction**, and no basis whatsoever upon which to seek unnoticed, ex parte relief;  (ii) Mr. Hwu intentionally misrepresented certain facts to the Court;  and (iii) Mr. Hwu was dilatory in rectifying his mistakes and omissions

---

[16] A district court's imposition of Rule  11 sanctions is reviewed for abuse of discretion. See *Cooter & Gell, supra,* 496 U.S. at 405; *Landscape Properties, Inc. v. Whisenhunt*, 127 F.3d 678, 682 (8th Cir. 1997).

once they were made known to him.  See, e.g., *Cooter & Gell,* 496 U.S. at 393.

*Id*. a 256 (emphasis added.)   Second, as with the instant case, the district court found that the

"**the manner in which Mr. Hwu prosecuted this action vexatiously multiplied the costs of**

**this litigation**."  *Id*. (emphasis added.)

This Court's finding that none of the "*Dataphase* factors" favored an injunction – and "the

lack of any convincing evidence on three of the five elements of Rivard's "false advertising" claim"

– leads to only one conclusion: Rivard and its counsel violated the objective reasonableness

standard of Rule 11 by moving for a preliminary injunction without conducting reasonable inquiry

and then maintaining the motion despite lack of any credible evidence to support its motion.

Indeed, all of the evidence undermined Rivard's allegations.  Rivard certainly knew this and had

copies of Hoff's independent testing of Ideal's D3 Needles.  Given Hoff's prior findings that the D3

Needles are "clearly 100% detectable," and given the fact that there were no known incidents of a

broken and undetected D3 Needle reaching a consumer – all of which Rivard and its counsel knew

prior to filing the motion – the motion must be viewed as frivolous and filed for improper purposes.

After consulting with a client, Rule 11 requires that an attorney not rely solely on the client's

opinion that its assertions give rise to a triable claim, but instead perform an independent

investigation.  *Antonious v. Spalding & Evenflo Co, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002),

citing *S. Bravo Sys., Inc. v. Containment Techs. Corp.*, 96 F.3d 1372, 1375 (Fed. Cir. 1996).

Moreover, once Rivard realized that Hoff used entirely different test procedures and

protocols than all of his previous testing, and which did not replicate field conditions – let alone

tests which admittedly would not survive peer review, had no statistical significance, and were

results based on "gut feel" – a reasonable litigant and attorney would have withdrawn the motion and put an end to the nonsense.[17]   However, Rivard and its counsel did no such thing.

Having to depose Hoff three times, respond to Rivard's four separate briefs in support of its motion, and fight with Rivard over discovery issues related to the injunctive motion caused Ideal's legal bills to increase exponentially.   Rivard and its counsel shirked their duties and responsibilities under Rule 11.[18]   Even a lawyer with ordinary skill in the law would have known that Hoff's expert reports were wholly unreliable.   Viewed objectively, Rivard's intent was "to force [Ideal] to either yield to its position or be crushed under a great weight of misstated factual assertions and drowned in a sea of bombast," which violates Rule 11 and warrants sanctions.[19]

## II.   Rivard's Counsel Should Be Sanctioned Under Section 1927.

Under 28 U.S.C. § 1927, any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously, may be required by the court to satisfy personally the excess costs, expenses and attorney fees reasonably incurred because of such conduct."   The statute is limited to attorney misconduct and requires "that there be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court."   *Edwards v. G.M. Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).   See also *Andretti v. Borla Performance Industries, Inc.*, 426 F.3d 824, 833 (6th Cir. 2005).

The Eighth Circuit has held that "the statute permits sanctions when an attorney's conduct, 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'"   *Jones v. United Parcel Service, Inc.*, *supra*, 460 F.3d at 1009 (affirming the

---

[17] See, e.g., *Roger Edwards, L.L.C., supra,* 227 F.R.D. 19 ("The difficulty for Roger Edwards is that the deficiencies in its motion went well beyond debatable inference and colorable legal argument. The affidavit offered to prove the mislabeling purported to identify numerous details in which the product had not conformed to a parade of regulations; but the only basis for the charge of fraud on the part of Fiddes in marketing the allegedly mislabeled product was the explicit, conclusory inference by the expert that alleged mistakes must have been dishonest because there were a lot of technical problems with the labeling.

[18] Indeed, Ideal has been forced to spend a substantial portion of it annual sales of the D3 Needles just to defend against Rivard's motion for preliminary injunction.

district court's finding that attorney acted in bad faith when he filed a 480-page pleading in which portions were "created for the sole purpose of causing unnecessary delay and a needless increase in the cost of litigation" and, therefore, "multiplie[d] the proceedings . . . unreasonably and vexatiously").   See also *Bates v. 84 Lumber Co., L.P.*, 205 Fed.Appx. 317, 2006 WL 2660728 at *4 (6th Cir. 2006 (unpublished) ("The district court explained that its 'concern under Section 1927' was that it suspected that 84 Lumber was 'attempting to make this case so expensive that the plaintiff can't afford to litigate it.'")

Here, Rivard's counsel acted recklessly, in bad faith, with improper motives, and "multiplie[d] these proceedings unreasonably and vexatiously" by filing and maintaining Rivard's motion knowing that it had no evidence to support its argument that the D3 Needles were not detectable – in fact, they knew all of the evidence was to the contrary.   The conduct of Rivard and its counsel also unnecessarily and unreasonably drove up the cost of this already expensive patent infringement lawsuit.   Thus, sanctions are also appropriate and warranted under Section 1927.[20]

## II. SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY ARE ALSO WARRANTED.

Under a district court's inherent power, "an exception to the American Rule has evolved which permits the court to impose a reasonable attorneys' fee to the prevailing party when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"   *F.D. Rich Co., Inc. v. United States ex rel. Indus. Lumber Co., Inc*., 417 U.S. 116 (1974).   In *Chambers v.*

---

[20] Rivard and its counsel likely could have avoided sanctions under Section 1927 by withdrawing their preliminary injunction motion after receiving the Rule 11 letter from Ideal's counsel.   In *Sanderson v. Indiana Soft Water Services, Inc*., 2004 WL 1784755 (S.D. Ind. 2004), the plaintiff filed a motion for preliminary injunction and since the defendant "viewed the motion as a completely groundless effort to harass it," its "counsel prepared and served on Sanderson's counsel a draft motion for sanctions pursuant to Rule 11."   Unlike Rivard and his counsel, "[i]n response to the Rule 11 'warning shot,' Sanderson and his counsel withdrew the motion for preliminary injunction."   The defendant subsequently sought sanctions under Section 1927, arguing that it did not contain the "warning shot" requirement under Rule 11.   The district court denied the sanctions motion on the grounds that "such an award of sanctions under Section would effectively nullify the warning shot provision of Rule 11(c)(1)(A).

*NASCO*, *Inc*., 501 U.S. 32, 45-46 (1991), a seminal case on the issue of sanctions imposed under a

court's inherent authority:

> A court may assess attorney's fees when a party has acted in bad faith,
> vexatiously, wantonly, or for oppressive reasons.  In this regard, if a court finds that
> fraud has been practiced upon it, or that the very temple of justice has been defiled, it
> may assess attorney's fees against the responsible party, as it may when a party shows
> bad faith by delaying or disrupting or by hampering enforcement of a court order.

> Referring to sanctions under Rule 11 and 28 U.S.C. § 1927, the Supreme Court also held:

> when there is bad faith conduct in the course of litigation that could be adequately
> sanctioned under the Rules, the court ordinarily should rely on the Rules rather than
> the inherent power.  But if in the informed discretion of the court, neither the statute
> nor the Rules are up to the task, the court may safely rely on its inherent power.

*Chambers*, 501 U.S. at  50.

An award of attorney fees "is permissible under a court's inherent powers as long as the

person being sanctioned has demonstrated bad faith,"  *Willhite v. Collins*, 459 F.3d 866, 870 (8th

Cir. 2006) (upholding district court's finding "that Van Sickle was 'remiss in either neglecting to

consider, or entirely disregarding, the doctrines of res judicata and collateral estoppel' and that 'no

competent lawyer could reasonably believe there was a colorable or legally-supportable claim.' The

district court also stated that Van Sickle had 'caused each defendant to incur significant attorneys'

fees and costs, and such conduct is deserving of sanction.'"). See also *Dillon v. Nissan Motor Corp.*,

986 F.2d 263, 267 (8th Cir. 1993); *Harlan v. Lewis*, 982 F.2d 1255, 1260 (8th Cir. 1993); *Stevenson*

*v. Union Pacific RR*, 354 F.3d 739 (8th Cir. 2003); *Greiner v. City of Champlin*, 152 F.3d 787 (8th

Cir. 1998) (upholding sanction of attorney fees on attorney held responsible for expert's actions).

This Court has discretion to impose the most appropriate sanction under the circumstances,

and is not constrained to impose the least onerous sanction available.  *Chrysler Corp. v. Cary*, 186

F.3d 1016 (8th Cir. 1999).  Whether to award attorney fees under this Court's inherent power is

determined by the parties' conduct prior to and during the litigation (although not solely on conduct

leading to the substantive claim), rather than which party wins or loses.  The Eighth Circuit has

recognized "the filing of a counterclaim as litigation conduct"; consequently, fees awarded under the bad faith exception for initiating a meritless counterclaim "are designed to punish the abuse of the judicial process rather than the original wrong.'" *Lamb Eng. & Construction Co. v. Nebraska Public Power District*, 103 F.3d 1422, 1435-36 (8th Cir. 1997).

Filing the motion constituted bad faith by Rivard and its counsel. Rivard filed the motion knowing that millions of D3 Needles had been sold without a single incident. Yet, it filed the motion claiming it required "expedited" consideration and relief because of a supposed "serious threat to the public health and safety" and "substantial risk to the public safety" from the D3 Needles. Rivard's argument that the D3 Needles were not "sufficiently detectable" was also a frivolous argument since its own expert could not define that term. In fact, it was Rivard's needles that had a history of breakage – Ideal's D3 Needles are far less likely to break because of its patented thick wall construction and metallurgy. The fact that Rivard attempted to enjoin Ideal's D3 sales in the United States but not in its own country also evidences the disingenuous and vexatious nature of its motion. Finally, the fact that Rivard and its counsel continued to pursue their motion even in light of repeated testimony by their own expert that the D3 Needles are "detectable" and the absence of any credible evidence to the contrary is further, if not dispositive evidence, of sanctionable and abusive litigation conduct.

## CONCLUSION AND RELIEF REQUESTED

Rivard's motion for preliminary injunction never should have been filed and never should have been maintained. There was no credible evidence supporting the motion when it was filed, and there was certainly no credible evidence developed thereafter. This motion resulted in a colossal waste of time and resources of the parties and the Court. Using the "serious public health and safety risk" argument was nothing less than an inexcusable scare tactic. Therefore, Plaintiff Ideal respectfully requests that this Honorable Court issue an Order:

(A)     Adjudging that the filing of the motion for preliminary injunction violated the provisions of F. R. Civ. P. 11;

(B)     Adjudging that the filing of the motion for preliminary injunction violated the provisions of 28 U.S.C. § 1927;

(C)     Adjudging that the motion for preliminary injunction was filed in bad faith, with fraudulent intent, vexatiously, wantonly, and/or for oppressive reasons;

(D)     Requiring that Rivard and/or its attorneys pay Plaintiff Ideal the costs and attorneys fees incurred by it as a result of the filing motion for preliminary injunction, pursuant to F. R. Civ. P. 11, 28 U.S.C. § 1927, and/or this Court's inherent authority;

(E)     Requiring that Plaintiff Ideal file its attorney fees and costs incurred in connection with Rivard's motion and claims within 30 days after entry of the Court's order granting this motion, and further requiring that Rivard shall file any objections to the attorney fees and costs sought by Plaintiff Ideal within 14 days after filing; and

(F)     Providing such other or further relief as the Court may deem just and appropriate under the circumstances.

*Respectfully submitted*,

Attorneys for Plaintiff Ideal Instruments, Inc.

April 20, 2007                    By: /s/ Mark R. Fox
                                  Mark R. Fox
                                  Toni L. Harris
                                  Fraser Trebilcock Davis & Dunlap, P.C.
                                  124 West Allegan Street – Suite 1000
                                  Lansing, Michigan 48933
                                  (517) 482-5800 –  Telephone
                                  (517) 482-0887 – Facsimile
                                  mfox@fraserlawfirm.com

                                  and

April 20, 2007                    By: /s/Jay Eaton
                                  Jay Eaton
                                  Nyemaster, Goode, West, Hansell & O'Brien P.C.
                                  700 Walnut –  Suite 1600
                                  Des Moines, Iowa 50309-3899
                                  (515) 283-3100 – Telephone
                                  (515) 283-3108 – Facsimile
                                  JE@nyemaster.com

20

**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 20, 2007 the foregoing instrument was electronically filed with the Court using the CM/ECF system and served upon all parties to the above case and/or to each of the attorneys of record herein at their respective addresses disclosed on the pleadings:

By:   __X__ Electronic Service

/s/ Mark R. Fox_____