**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | |
|---|---|
| IDEAL INSTRUMENTS, INC., a Michigan corporation, | |
| Plaintiff, | No. C 05-3079-MWB |
| vs. | **MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S PETITION FOR ATTORNEY FEES AND EXPENSES RELATED TO MOTION FOR PRELIMINARY INJUNCTION** |
| RIVARD INSTRUMENTS, INC., a foreign corporation, and MERIL RIVARD, a foreign national, | |
| Defendants. | |

———————————

**TABLE OF CONTENTS**

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    A. *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        *1.* *The parties and the litigation* . . . . . . . . . . . . . . . . . . . 3
        *2.* *Rivard's Motion For Preliminary Injunction* . . . . . . . . . . . 5
        *3.* *Ideal's Motion For Sanctions* . . . . . . . . . . . . . . . . . . . . 8
    B. *Ideal's fee petition* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    A. *Applicable Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        *1.* *Which Circuit's law applies?* . . . . . . . . . . . . . . . . . . . . 11
        *2.* *Eighth Circuit standards for the amount of a Rule 11 sanction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    B. *Matters In Dispute* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    C. *Determination Of The Fee Award Necessary For Deterrence* . . . . . . . 19

    *D.  Determination Of The Expenses Award* . . . . . . . . . . . . . . . . . . . . . 22
    *E.  Apportionment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**III.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

By order dated July 3, 2007, this court imposed Rule 11 sanctions against the corporate defendant and its attorneys, including local counsel, jointly, for filing their motion for preliminary injunction.  The corporate defendant had asserted that the plaintiff was committing false advertising and threatening public safety by selling patented "detectable" hypodermic needles for use on livestock that are not actually "detectable" within the meaning of the meat processing, veterinary, and detectable needle industries.  The court, however, concluded that the corporate defendant's preliminary injunction motion lacked evidentiary support, at least as initially filed, and had been filed for improper purposes.  *See Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322 (N.D. Iowa 2007).  This matter is now before the court on the plaintiff's petition for attorney fees and expenses incurred in litigating the improvident motion for preliminary injunction, to which the corporate defendant has filed various objections.

Case 3:05-cv-03079-MWB   Document 236   Filed 09/19/07   Page 2 of 24

# I. INTRODUCTION

## A. Background

### 1. The parties and the litigation

Although the court has plowed much of this ground before, at least some background to the present petition for attorney fees and expenses is required.[1] Plaintiff Ideal Instruments, Inc., (Ideal) is a Michigan corporation with its principal place of business in Lansing, Michigan.[2] Defendant Rivard Instruments, Inc., is a closely held for-profit Canadian corporation, and defendant Meril Rivard, who is a citizen of Canada and resident of Winnipeg, Manitoba, is the president and majority, if not sole, shareholder of Rivard Instruments. In this ruling, references to "Rivard" refer only to Rivard Instruments, as individual defendant Meril Rivard was not identified as a movant on the

---

[1]This ruling on the plaintiff's petition for attorney fees is, in fact, the sixth substantial ruling in this case. *See Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F. Supp. 2d 589 (N.D. Iowa 2006) (*Ideal Instruments I*) (ruling on defendants' challenges to the forum in which various claims should be litigated and personal jurisdiction over the individual defendant); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F. Supp. 2d 640 (N.D. Iowa 2006) (*Ideal Instruments II*) (ruling on motion to reconsider and to stay); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 479 F. Supp. 2d 968 (N.D. Iowa 2007) (*Ideal Instruments III*) (ruling on the corporate defendant's motion for preliminary injunction based on the defendants' false advertising counterclaim pursuant to § 43 of the Lanham Act, codified at 15 U.S.C. § 1125(a)(1)(B)); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322 (N.D. Iowa 2007) (*Ideal Instruments IV*) (ruling on plaintiff's motion for sanctions pursuant to Rule 11, 28 U.S.C. § 1927, and/or the court's inherent authority for filing their motion for preliminary injunction); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, ___ F. Supp. 2d ___, 2007 WL 2296407 (N.D. Iowa Aug. 10, 2007) (*Ideal Instruments V*) (ruling on patent claim construction after *Markman* hearing).

[2]For present purposes, the court will not distinguish between Ideal and its parent company, Neogen Corporation.

3

motion for preliminary injunction and has not been sanctioned in this case for filing or litigating that motion.

Both Ideal and Rivard manufacture "detectable" hypodermic needles for use, for example, in hypodermic syringes for livestock. The needles are "detectable" in the sense that they are made to be easily detected in the carcasses of slaughtered animals using metal detectors installed in meat processing plants, if the needles break off or are otherwise inadvertently left behind in the course of injecting the animals. Both parties hold patents for "detectable" needles. More specifically, Ideal is the assignee of United States Patent No. 6,488,668 (the '668 patent) and United States Patent No. 6,960,196 (the '196 patent), both for a "detectable heavy duty needle." Ideal manufactures, sells, and distributes a product purportedly exploiting the inventions disclosed in the '668 and '196 patents under the commercial name "D3 Detectable Needles." Rivard holds a Canadian patent for a similar device and manufactures "detectable" needles purportedly exploiting that patent. Both parties' products are used extensively in the livestock industry in the United States.

Ideal filed the present lawsuit on December 30, 2005, but has since filed various amendments, so that the operative document is now Ideal's Third Amended Complaint filed December 29, 2006 (docket no. 122). The claims in Ideal's Third Amended Complaint, at least those that are before the court and not stayed, are the following: infringement by Rivard Instruments of Ideal's '668 patent in Count I; infringement, including inducing infringement, by Meril Rivard of Ideal's '668 patent in Count II; infringement by Rivard Instruments of Ideal's '196 patent in Count III; infringement, including inducing infringement, by Meril Rivard of Ideal's '196 patent in Count IV; and product disparagement or trade libel by both defendants in Count VI.

Rivard filed its Answer (docket no. 129) to Ideal's Third Amended Complaint on January 16, 2007, denying Ideal's claims and asserting numerous affirmative defenses and

counterclaims.  Of interest here is Rivard's Eighth Counterclaim, which asserts a "false descriptions" form of "false advertising" in violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  That counterclaim alleges, in essence, that Ideal advertises its D3 needles as "detectable," but such needles are not sufficiently detectable as understood in the detectable hypodermic needle and meat processing industries, so that Ideal's representations constitute false statements of fact.[3]  Ideal denies all of Rivard's counterclaims.  *See* Plaintiff's Answer And Affirmative Defenses To Second Amended Counterclaims filed February 5, 2007 (docket no. 142).

### 2.  *Rivard's Motion For Preliminary Injunction*

Rivard filed the original version of its Motion For Preliminary Injunction on October 30, 2006 (docket no. 85), seeking to enjoin Ideal from violating the false advertising provisions of § 43 of the Lanham Act, codified at 15 U.S.C. § 1125(a)(1)(B), by selling patented "detectable" hypodermic needles for livestock that are not actually "detectable," as the defendants alleged in their Eighth Counterclaim.  More specifically, Rivard sought an order preliminarily enjoining Ideal from selling its "detectable" needles and also enjoining Ideal to recall all such needles in the interest of public safety.  Rivard's motion for preliminary injunction, at least initially, relied exclusively on the results of testing of Ideal's D3 needles by its expert, Dr. Hoff, conducted at the defendants' request in October 2006.  However, Rivard filed various supplements to its motion on November 28, 2006 (docket no. 105), December 12, 2006 (docket no. 115), and February 2, 2007 (docket no. 140).  More specifically, the November 28, 2006, supplement incorporated results of further testing by Dr. Hoff, undertaken on his own initiative in November 2006;

---

[3]This counterclaim includes allegations of other false statements in Ideal's advertising of its D3 needles, but those allegations were not material to the corporate defendant's subsequent motion for preliminary injunction.

5

the December 12, 2006, supplement asserted new arguments about Ideal's failure to use metal detectors to verify detectability of its products and purported problems with Ideal's products; and the February 2, 2007, supplement asserted that new metallurgical testing of Ideal's needles by the defendants' metallurgy expert revealed that Ideal's needles were sometimes made with a type of stainless steel that Ideal had considered unsuitable for "detectable" needles.

Ideal filed a comprehensive Opposition (docket no.153) to Rivard's motion for preliminary injunction, as repeatedly supplemented, on March 7, 2007. Rivard filed a Reply (docket no. 154) on March 9, 2007. On March 10, 2007, Ideal filed two further declarations (docket no. 155) in response to what Ideal contended were "new" arguments in Rivard's Reply. Ideal also fired various "warning shots" at Rivard urging Rivard to withdraw its Motion For Preliminary Injunction or face a motion for sanctions.

After various delays caused by Rivard's supplementation of its Motion For Preliminary Injunction and discovery and other disputes related to that motion, Rivard's Motion For Preliminary Injunction eventually came on for hearing on March 13, 2007. On March 28, 2007, the court filed a ruling denying Rivard's Motion For Preliminary Injunction as repeatedly supplemented. *See Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 479 F. Supp. 2d 968 (N.D. Iowa 2007) (*Ideal Instruments III*). In that ruling, the court found, *inter alia*, that the testing in October 2006 by Rivard's expert, Dr. Hoff, on which Rivard had initially based its Motion For Preliminary Injunction, "has no probative value whatsoever concerning the 'detectability' of Ideal's D3 needles within the meaning of the livestock and meat processing industries owing to the flawed procedures that bore no relationship to industry conditions or the conditions of prior tests commissioned by the [National Pork Board (NPB)]." *Ideal Instruments III*, 479 F. Supp. 2d at 977. Similarly, the court found that Dr. Hoff's supplemental testing in November 2006 "does not support

6

a conclusion that Ideal's D3 needles are not 'detectable.'" *Id.* at 978. As to the "wrong steel" dispute raised as Rivard's last ground for preliminary injunctive relief, the court found that there was no convincing evidence that the use of the "wrong" stainless steel alloy in some of Ideal's D3 needles resulted in needles that were not "detectable" or that were a danger to the public. *Id.* at 981.

In its legal analysis, the court concluded that "Rivard has little or no chance of proving the 'literal falsity' element of its 'false advertising' claim under § 43(a) of the Lanham Act," that "the lack of any convincing evidence on three of the five elements of Rivard's 'false advertising' claim—false representation, deception, and injury to claimant—means that Rivard has little or no likelihood of success on such a claim under governing law, and such limited likelihood of success clearly does not support the sweeping preliminary injunctive relief Rivard seeks." *Id.* at 989-90. Furthermore, the court found that "even though Rivard has also failed to prove likelihood of success on the merits, denial of injunctive relief would be justified solely by Rivard's failure to demonstrate irreparable harm." This court concluded that, "where there has been no convincing proof of false advertising, there is no likelihood of harm, let alone irreparable harm, to a competitor from that alleged false advertising that would justify a preliminary injunction on the sale of the products in question or a preliminary injunction requiring the recall of such products." *Id.* The court also found that the "balance of harms" factor "weighs decidedly against granting Rivard the relief that it seeks," *id.* at 993-94 (internal quotation marks and citations omitted), and that "the public interest" did not weigh in favor of a preliminary injunction, where the public interest would not be served, because the court had found no false statements or safety risks from allegedly false labeling to be enjoined. *Id.* at 994. Because none of the pertinent factors weighed in favor of granting

the preliminary injunctive relief that Rivard sought, the court denied Rivard's Motion For Preliminary Injunction. *Id.*

### 3. *Ideal's Motion For Sanctions*

On April 20, 2007, Ideal filed its Combined Motion And Brief In Support Of Motion For Sanctions Against Defendants And Their Attorneys Pursuant To F.R. Civ. P. 11, 28 U.S.C. § 1927, and/or This Court's Inherent Authority (Ideal's Motion For Sanctions) (docket no. 165), seeking sanctions against Rivard and its attorneys for filing and maintaining Rivard's Motion For Preliminary Injunction. Ideal's grounds for sanctions are essentially the following: (1) sanctions under Rule 11 of the Federal Rules of Civil Procedure are warranted, because the court's ruling on Rivard's Motion For Preliminary Injunction can only lead to the conclusion that Rivard and its counsel violated the "objective reasonableness" standard of Rule 11 by moving for a preliminary injunction without conducting a reasonable inquiry, then maintained that motion despite the lack of any credible evidence to support it; (2) sanctions under 28 U.S.C. § 1927 are warranted, because Rivard's counsel acted recklessly, in bad faith, and with improper motives, and thereby multiplied the proceedings unreasonably and vexatiously, by filing and maintaining the Motion For Preliminary Injunction knowing that Rivard had no evidence to support its argument that Ideal's D3 needles were not "detectable"; and (3) sanctions under the court's inherent authority are warranted, because Rivard's Motion For Preliminary Injunction was filed in bad faith and disingenuously in light of evidence known to Rivard. On May 8, 2007, Rivard filed its Memorandum In Opposition To Ideal's Motion For Sanctions (Rivard's Opposition) (docket no. 178). On May 8, 2007, the same day that Rivard filed is Opposition, Ideal filed a Reply (docket no. 179).

The court held oral arguments on Ideal's Motion For Sanctions on June 28, 2007. Thereafter, on July 3, 2007, the court entered its Memorandum Opinion And Order

8

Regarding Plaintiff's Motion For Sanctions Against Defendants And Their Attorneys Pursuant To Fed. R. Civ. P. 11, 28 U.S.C. § 1927, And/Or The Court's Inherent Authority (The Sanctions Ruling). *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322 (N.D. Iowa 2007) (*Ideal Instruments IV*). In that order, the court imposed sanctions pursuant to Rule 11, against Rivard Instruments, Inc., and its attorneys, including local counsel, jointly, consisting of an award of *all* of Ideal's reasonable attorney fees and expenses incurred in litigating Rivard's Motion For Preliminary Injunction, including challenges to Rivard's motions to supplement its Motion For Preliminary Injunction and underlying discovery disputes, *until February 2, 2007*, and *half* of Ideal's reasonable attorney fees and expenses incurred thereafter in litigating Rivard's Motion For Preliminary Injunction. Specifically, the court concluded that Rivard and its attorneys violated Rule 11(b)(1) and (b)(3) by relying on Dr. Hoff's obviously invalid and unreliable testing in October and November 2006, but *did not* violate Rule 11 by relying on the report of their metallurgical expert as a ground for seeking a preliminary injunction. Even so, the court concluded that reliance on adequate evidence did not come until Rivard's February 2, 2007, supplement (docket no. 140), and thereafter, Rivard and its attorneys continued to rely, in significant part, on Dr. Hoff's obviously invalid and unreliable October and November 2006 testing, warranting imposition of a sanction of *half* of Ideal's fees and expenses after the filing of the February 2, 2007, supplement.

The court established a schedule for the submission by Ideal of a claim, in compliance with N.D. IA. L.R. 54.2, for *all* fees and expenses incurred in litigating Rivard's Motion For Preliminary Injunction and Rivard's response challenging the reasonableness of the fees and expenses claimed or their relationship to litigation of Rivard's Motion For Preliminary Injunction. The court explained that it would make the

9

adjustments to the award of fees and expenses described above, in addition to an evaluation of the reasonableness of the claim.

Eventually, in the wake of denial of Rivard's Motion For Preliminary Injunction and the court's Sanctions Ruling, the parties filed a stipulation (docket no. 206) on July 24, 2007, for dismissal without prejudice of Rivard's Fifth through Ninth Counterclaims, which included the "false advertising" counterclaim upon which Rivard's Motion For Preliminary Injunction had been based.

### B. Ideal's fee petition

Pursuant to the schedule set out in the July 3, 2007, Sanctions Ruling, Ideal filed its Petition For Attorney Fees And Expenses Related To Motion For Preliminary Injunction (docket no. 217) on August 9, 2007. In its Petition, Ideal seeks attorney fees of at least $165,283.00, taking into account the adjustment that the court said it would make for fees after February 2, 2007, and expenses in the amount of $13,610.44, plus an additional $3,000.00 in fees to account for time spent in August 2007 completing the fee petition, reviewing any objections by Rivard, preparing any necessary reply, and preparing for and attending any oral arguments on the fee petition.

Rivard filed its Objections In Response To Plaintiff Ideal's Petition For Attorney Fees And Expenses Related To Motion For Preliminary Injunction (docket no. 226) on August 24, 2007, then filed a corrected version (Corrected Objections) (docket no. 230) on August 29, 2007. Among other arguments concerning the fee petition, Rivard objects to a total of $66,011 of the fees and a total of $2,015.67 of the expenses claimed by Ideal.

Ideal filed a Reply In Support Of Petition For Attorney Fees And Expenses Related To Motion For Preliminary Injunction (docket no. 234) on August 31, 2007, and filed a Supplement (docket no. 235) making a minor correction to its Reply on September 4,

10

2007. After some adjustments to expense claims that Ideal concedes should be made, Ideal still claims $168,283.00 in fees, including fees for preparing the fee claim and responding to Rivard's objections, and $12,937.56 in expenses.

The court has not found oral arguments on Ideal's fee claim to be necessary. Therefore, Ideal's fee claim is now fully submitted.

## II. LEGAL ANALYSIS
### A. Applicable Standards
### 1. Which Circuit's law applies?

In its Sanctions Ruling, this court noted, "Even in litigation, such as patent litigation, that falls within the exclusive appellate jurisdiction of the Federal Circuit Court of Appeals, questions of whether or not to impose sanctions pursuant to Rule 11, 28 U.S.C. § 1927, or the court's inherent authority are resolved by application of the law of the regional circuit." *Ideal Instruments IV*, 243 F.R.D. at 333 (citing Federal Circuit cases so holding). Therefore, the court concluded that the applicable standards for sanctions were those articulated by the Eighth Circuit Courts of Appeals. *Id.* Similarly, this court concludes that the standards for determining the reasonable amount of attorney fees and expenses to award as a Rule 11 sanction should be resolved by application of the law of the regional circuit—in this case, the Eighth Circuit—as the amount of the sanction follows directly from the question of whether or not to impose sanctions, and does not appear to be a matter within the exclusive jurisdiction of the Federal Circuit Court of Appeals. *See Baldwin Hardward Corp. v. Franksu Enterprise Corp.*, 78 F.3d 550, 560 (Fed. Cir. 1996) (a challenge to monetary and *pro hac vice* sanctions imposed by the court did not raise issues within the exclusive jurisdiction of the Federal Circuit Court of Appeals, so that review of the challenge was guided by the law of the regional circuit).

11

### 2. *Eighth Circuit standards for the amount of a Rule 11 sanction*

Rule 11 expressly provides that, if the court determines, upon a party's motion, that sanctions are warranted for an opposing party's unwarranted filing of a substantive motion, "the court may award to the party prevailing on the [substantive] motion the reasonable expenses and attorney's fees incurred in presenting or opposing the [substantive] motion," and "[a]bsent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees." FED. R. CIV. P. 11(c)(1)(A). Rule 11 provides, further,

> A sanction imposed for violation of this rule *shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.* Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of *some or all of* the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

FED. R. CIV. P. 11(c)(2) (emphasis added). Thus, Rule 11 expressly "places within the district court's arsenal the ability to award reasonable expenses and attorney fees," but *only* upon the request of the opposing party, and *only* if warranted for effective deterrence. *Norsyn, Inc.*, 351 F.3d at 831 (citing FED. R. CIV. P. 11(c)(2), which permits an award of all or some of the attorney fees and costs incurred as a direct result of the violation, "if imposed on motion and warranted for effective deterrence").

The Eighth Circuit Court of Appeals has observed that, "Of course, '[c]ompensatory sanctions under Rule 11 must be reasonable in amount.'" *Landscape Properties, Inc. v. Whisenhunt*, 127 F.3d 678, 684 (8th Cir. 1997) (quoting *Silva v. Witschen*, 19 F.3d 725, 731 (1st Cir. 1994)). Therefore, in reviewing an award of fees and expenses as a Rule 11 sanction, the court has considered the reasonableness of the total

12

fee, in light of the reasonableness of the time claimed and the legal work done, the reasonableness of the hourly rate, and whether the expenses claimed were "the normal sort of expenses." *Id.* at 685; *Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1491 (8th Cir. 1994) (also considering the amount of the fees awarded in light of a reasonable number of hours and a reasonable hourly rate). The fee award may include time spent litigating the motion for sanctions as well as defending against the unreasonable action. *Kirk Capital Corp.*, 16 F.3d at 1491 (awarding fees for time spent on both the motion to dismiss and the sanctions motion, although reducing the hours claimed for each to reflect an amount that was sufficient to deter the misconduct in question).

The determination of hours reasonably expended at a reasonable hourly rate is only the starting point for determination of the amount of a Rule 11 fee award, however. The Eighth Circuit Court of Appeals has also recognized that it is appropriate for the court to consider whether the amount of the attorney fees and expenses awarded is necessary to deter repetition of the misconduct in question, pursuant to Rule 11(c)(2), as well as the sanctioned party's ability to pay, if the sanctioned party raises ability to pay as a defense to the amount of the sanction claimed. *Id.* Indeed, although the court may consider what amount of fees and expenses will fairly compensate the injured party for the reasonable attorney fees and costs that were occasioned by the filing of the sanctioned party's frivolous action, "the primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending" against the frivolous action. *Kirk Capital Corp.*, 16 F.3d at 1490; *see also* FED. R. CIV. P. 11(c)(2) ("A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."). To put it another way, a monetary sanction pursuant to Rule 11 "is not a complete substitute for an abuse of process type cause of action." *Id.* at 1491. Thus, the court may

13

properly adjust the hours claimed, to avoid an excessive sanction, even if the court finds that the hours claimed were occasioned by the frivolous action and that the hourly rate claimed is reasonable. *Id.* at 1490-91 (also noting that there was something inconsistent about asserting that the moving party's action was so frivolous as to merit sanctions, then contending that it took 279.10 hours of legal work in order to reveal what the defendants contended was obvious, so that the trial court properly reduced the hours claimed by 100, even though it left the hourly rate claimed intact, and the appellate court further reduced the compensable hours). Moreover, while the frivolous action by the sanctioned party may have reasonably occasioned other legal work on the case having nothing to do with the challenged action or the motion for sanctions, Rule 11 sanctions should not exceed what is necessary to deter the misconduct in question. *Id.*[4]

---

[4]In contrast, when fees and expenses are awarded to a prevailing party pursuant to a fee-shifting statute, a reasonable fee award is based on the determination of the hours reasonably expended times a reasonable hourly rate, based on prevailing market rates in relevant communities, adjusted for the degree of success enjoyed by the prevailing party, rather than by determination of the amount of the fee award necessary to deter like conduct by the losing party. *See, e.g., Ollis v. HearthStone Homes, Inc.*, ___ F.3d ___, ___, 2007 WL 2141674, *4 (8th Cir. July 27, 2007) (fee award pursuant to the fee-shifting provisions of the Civil Rights Act of 1964, citing *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984), also noting that the trial court had properly considered the factors set forth in *St. Louis Fire Fighters Ass'n v. City of St. Louis, Mo.*, 96 F.3d 323, 332 n.10 (8th Cir. 1996), which were the following: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases); *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 580-81 (8th Cir. 20006) (describing the same calculation and describing degree of success as "the most critical

(continued…)

## B. Matters In Dispute

As mentioned above, as revised in its Reply, Ideal seeks $168,283.00 in fees, including fees for preparing the fee claim and responding to Rivard's objections, and $12,937.56 in expenses. Although Rivard does not challenge the hourly rate charged by any of Ideal's attorneys, Rivard does challenge the claimed fees on a number of grounds.

Rivard's overarching argument is that many of the fees and expenses claimed are not a direct result of the violation found by the court, the unreasonable filing of the Motion For Preliminary Injunction. More specifically, Rivard identifies the following thirteen categories of billings that Rivard contends are clearly directed to matters other than litigating the preliminary injunction motion itself or are generally applicable to the lawsuit overall with only limited relationship to the preliminary injunction motion: (1) time relating to the Second Amended Complaint, which added Agri-Pro as a defendant; (2) time relating to filing of the Third Amended Complaint, which added claims involving the '668 patent; (3) time spent on the resistance to the deposition of Gordon Prindle, the inventor of the patents-in-suit; (4) time relating to production of prosecution files for the patents-in-suit; (5) time relating to actions against third parties; (6) time relating to counterclaims; (7) time relating to document production and discovery matters; (8) time relating to the deposition of Mr. Bohannon and the Rule 30(b)(6) deposition of Ideal's corporate representative on document issues; (9) time relating to depositions of former Ideal employees Phil Lawler and Cameron Poe; (10) time relating to *Markman* claim construction; (11) time relating to a potential lawsuit against Dr. Steven Hoff individually; (12) time relating to communications with Dr. Paul Sundberg of the National Pork Board; and (13) time relating to the Rule 30(b)(6) deposition of Rivard's corporate representative.

---

[4](...continued)
factor" in adjustments to the calculation).

15

In addition, Rivard urges the court to exclude from the calculation of the fee award fees and expenses relating to the sanctions motion itself and expenses that are unspecified as to time and event. Rivard also argues that the court should move the date from which only half of the relevant fees should be awarded back to November 22, 2006, because Rivard contends that, on that date, Ideal had evidence establishing that the incorrect steel was being used in its D3 needles, so that Ideal could have avoided some of the expense of litigating the preliminary injunction by making an earlier disclosure.

Rivard believes that the specific objections it has made to the fees claimed should, at a minimum, result in a reduction of Ideal's attorney fees by $66,011 and a reduction of its expenses by $2,015.67. However, Rivard argues that the court should defer hearing any arguments or making any decision concerning the proper apportionment of the fee award between and among Rivard and its attorneys, to avoid placing Rivard and its attorneys adverse to each other on any issue while this litigation is still pending.

The court finds it unnecessary to address Rivard's objections in detail, however, because application of the standard for the ultimate determination of attorney fees to award as a Rule 11 sanction—"to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending" against the frivolous action, *Kirk Capital Corp.*, 16 F.3d at 1490; *see also* Fed. R. Civ. P. 11(c)(2) ("A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.")—will moot those objections. Nevertheless, the court will address certain matters raised by Rivard, at least in the alternative to its determination of the amount of fees to award for the proper deterrent effect.

Rivard does not challenge the hourly rate charged by any of Ideal's attorneys, and the court emphatically finds that the hourly rates claimed are reasonable in light of the

16

qualifications of the attorneys and the nature of the case. The court also has no doubt that all of the time claimed was actually and reasonably expended on this litigation.

The first of Rivard's arguments that the court finds that it must address is Rivard's contention that many billing entries include activities that are not properly related to the Motion For Preliminary Injunction. The court agrees. Rule 11 provides, in part, that the court may award as a sanction "payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a *direct result* of the violation." FED. R. CIV. P. 11(c)(2). Moreover, as mentioned above, the Eighth Circuit Court of Appeals has recognized that the frivolous action by the sanctioned party may have reasonably occasioned other legal work on the case having nothing to do with the challenged action or the motion for sanctions, but that Rule 11 sanctions should not exceed what is necessary to deter the misconduct in question. *See Kirk Capital Corp.*, 16 F.3d at 1491; FED. R. CIV. P. 11(c)(2) ("A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."). It follows that fees that lack the appropriate "direct" relationship to the sanctionable conduct should not be awarded as a sanction pursuant to Rule 11, or the fee award will exceed what is necessary for the appropriate deterrent effect. On the other hand, the court agrees with Ideal that it is improper to exclude fees for an entire block of time, as Rivard appears to argue should be done, where only some part of the time claimed in a "block billing" was spent on activities not directly related to responding to the sanctionable action. Nevertheless, where, as here, the problem of determining what time does have the appropriate "direct" relationship is compounded by "block billing," as discussed below, the court finds that it may properly apply a twenty-percent across-the-board reduction for claims for activities that lack the required "direct" relationship to responding to the sanctionable conduct.

17

The second of Rivard's objections that the court must address, at least in the alternative, is Rivard's argument that Ideal's fee claim is improperly based on "block billing." In other contexts, the undersigned has repeatedly recognized a court's authority to reduce fee claims across-the-board by some percentage for "block billing," that is, billing entries that specify only the daily activities, but that do not specifically indicate how much time was spent on each individual task. *See, e.g., Rural Water Sys. No. 1 v. City of Sioux Center, Iowa*, 38 F. Supp. 2d 1057, 1066 (N.D. Iowa 1999); *Houghton v. Sipco, Inc.*, 828 F. Supp. 631, 643-44 (S.D. Iowa 1993). As Rivard points out, many of the billing entries in Ideal's fee claim indicate large blocks of time for which numerous activities are listed, but for which there is no indication of how much time was spent on each individual task. An example is the entry for Ideal's lead attorney for October 31, 2006, on which the attorney claimed 6.50 hours for the following tasks: "Review motion for preliminary injunction; review motion to add counterclaims; meeting with Mr. Herbert regarding strategy; telephone conference with [REDACTED] work on brief in opposition to expedited hearing; prepare and arrange service of subpoena on Professor Steven Hoff; emails with local counsel; receive and review memo from [REDACTED] legal research; receive and review email from Judge Bennett's secretary; email from attorney Ondersma." This and similar "block billings," which are found throughout Ideal's fee claim, would warrant at least a twenty-five percent across-the-board reduction in Ideal's fee claim for time related to Rivard's improvident Motion For Preliminary Injunction.

Therefore, in addition to reducing by fifty percent any fees incurred by Ideal after February 2, 2007, in defending against the Motion For Preliminary Injunction,[5] and even

---

[5]Rivard contends that this "half fee" date should be moved back to November 22, 2006, because on that date, Ideal had evidence establishing that the incorrect steel was

(continued...)

18

absent any other adjustments for the necessary deterrent effect, the court would reduce the total remaining fees claimed by forty-five percent for hours not "directly" related to litigation of the Motion For Preliminary Injunction and "block billing." Such a reduction would reduce the fees that the court would otherwise consider awarding from the $168,283.00 claimed by Ideal (which includes the fifty percent reduction after February 2, 2007) to $92,555.65. From this revised starting point, the court turns to determination of the fee award necessary for deterrence, as required by Rule 11(c)(2).

### C. Determination Of The Fee Award Necessary For Deterrence

As explained above, Rule 11 sanctions should not exceed what is necessary to deter the misconduct in question. *See Kirk Capital Corp.*, 16 F.3d at 1491; FED. R. CIV. P. 11(c)(2) ("A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated."). In *Kirk Capital Corporation*, the Eighth Circuit Court of Appeals found that "there is always a certain subjectivity in determining the reasonableness of legal fees" and that the reviewing court "d[id] not like to second guess the District Judge." *Kirk Capital Corp.*, 16 F.3d at 1491. Nevertheless, the court set aside the district court's determination of the "appropriate" Rule 11 fee award based on the appellate court's subjective view that the district court's award had been "excessive" to serve the desired deterrent purpose of Rule 11 sanctions. *Id.* In doing so, the court held that it was appropriate for a court (trial

---

5(…continued)
being used in its D3 needles, so that Ideal could have avoided some of the expense of litigating the preliminary injunction by making an earlier disclosure. The court specifically declines to consider this argument, first, because the reasonable time for Rivard to ask the court to reconsider the "half fee" date has passed and because the argument is mooted by the court's determination of the fee necessary for the proper deterrent effect.

or appellate) to adjust the attorney fee award to serve the deterrent purpose, even where the court accepted the reasonableness of the opposing party's attorney's hourly rate. *Id.* at 1490. Thus, this court concludes that it must make a determination of whether the fees claimed are "excessive" to serve the deterrent purpose of Rule 11 sanctions, even though the court accepted above that the attorneys' claimed hourly rates were reasonable and even though the court opined, further, that the court had no doubt that all of the hours claimed had been reasonably expended on litigation of this case.

In *Kirk Capital Corporation*, the court also observed, "On the face of it, there is something very inconsistent with the assertion that the plaintiffs filed a patently frivolous complaint meriting sanctions under Rule 11 and contending that it took 279.10 [the hours claimed] or even 179.10 hours of legal work [the hours accepted by the trial court] in order to reveal what defendants contend is obvious." *Id.* at 1491. Therefore, the appellate court reduced the hours claimed for litigating the frivolous motion to 50 and the hours for prosecuting the Rule 11 motion to 25. *Id.* at 1491. The court then adjusted the resulting fees and expenses, further, to three-fourths of the adjusted fees for the hours and expenses permitted by the court to arrive at the "appropriate" monetary sanction to achieve the deterrent effect intended by Rule 11 sanctions. *Id.*

Here, the court does not believe that there is anything inconsistent between the hours claimed by Ideal's attorneys and their contention that Rivard's Motion For Preliminary Injunction was frivolous. *Compare id.* at 1490. Owing to the nature and complexity of the issues involved here, and based on the court's own experience with addressing "frivolous" arguments in other contexts, the court finds that it is quite possible that more time and effort will be required to prove that an argument is frivolous than will be required to defend against an argument for which there is a real, albeit disputed evidentiary basis. Thus, the question here is not whether there is anything excessive about

20

the hours claimed, *as compared to the nature of the issues*, but whether the resulting fee claim is excessive *as a sanction intended to serve Rule 11's deterrent purposes*. *Cf. id.* (the purpose of Rule 11 sanctions is to deter comparable misconduct).

To put it another way, the court concludes that the measure of the appropriate fee award here is not the hours expended, but the *total amount* of the claimed fee that is required to have the desired deterrent effect. *Cf. id.* at 1491 (the district court had properly determined that the appropriate monetary sanction against the misbehaving party was three-fourths of the fees and expenses found to be in proper proportion to the sanctionable conduct). The court concludes that a total fee award of $50,000—that is, something over half (54%) of the fees that the court found above could be awarded after adjustments for "block billing" and lack of relationship to the underlying frivolous motion ($92,555.65)—is a sufficient Rule 11 sanction "to deter repetition of [sanctionable] conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(2) (limitation on Rule 11 sanctions). It is true that such an award is substantially less than the sum claimed by Ideal, but the purpose of Rule 11 sanctions is "not to compensate the opposing party for all of its costs in defending" against the frivolous action, but "to deter attorney and litigant misconduct." *Kirk Capital Corp.*, 16 F.3d at 1490. Such an award is considerably more than a "hand slap" and is, instead, sufficiently substantial to give a party or attorney pause before filing a motion that the party or attorney should reasonably recognize lacks evidentiary support and that a factfinder might reasonably infer was being filed for an improper purpose. *See Ideal Instruments IV*, 243 F.R.D. 322 (finding these grounds for sanctions in this case pursuant to Rule 11(c)(3) and (c)(1), respectively).

Therefore, the court will award Ideal $50,000 in attorney fees to be paid by Rivard and its attorneys, jointly, as the fee component of the Rule 11 sanction in this case.[6]

### D. Determination Of The Expenses Award

Ideal also claims $12,937.56 in expenses, after adjustments that Ideal concedes should be made. Although many of the claimed expenses are inadequately itemized to determine their relationship to the sanctionable conduct, the court notes that Ideal has, itself, "discounted" some of the claimed expenses. Specifically, Ideal reduced the expenses claimed for computerized legal research and photocopy expenses by 66%. The court finds that the expenses claimed, as adjusted by Ideal, were directly related to litigation of Rivard's improvident Motion For Preliminary Injunction and that no further reduction is necessary to prevent the award of expenses from exceeding what is appropriate to deter wrongful conduct by Rivard and its attorneys. Therefore, the court will award all of the expenses claimed by Ideal, in the amount of $12,937.56, as the expenses component of the Rule 11 sanction in this case.

---

[6]Although the court determined in its Sanctions Ruling that Ideal should be awarded *all* of its fees and expenses incurred in litigating the Motion For Preliminary Injunction prior to February 2, 2007, and *half* of its fees and expenses incurred in litigating the Motion For Preliminary Injunction after that date, the court does not believe that it is inconsistent, in light of the fee claim actually submitted, to take the amount claimed as only its starting point, and then to award something less as the amount appropriate to serve the deterrent purposes of Rule 11. Indeed, such an adjustment is mandated by Rule 11 and the decision in *Kirk Capital Corporation*. Moreover, the court made clear in its Sanctions Ruling that it would review the fee claim ultimately submitted to "evaluat[e] the reasonableness of the claim" and the relationship of the claimed fees and expenses to litigation of Rivard's Motion For Preliminary Injunction. *See Ideal Instruments IV*, 243 F.R.D. at 349. As explained herein, in the context of a Rule 11 fee award, "reasonableness" is the amount sufficient to serve the desired deterrent effect, not the amount reasonably claimed.

### E. Apportionment

In its Sanctions Ruling, the court held that it was appropriate to impose Rule 11 sanctions *jointly* upon both Rivard and its attorneys, including local counsel. *See Ideal Instruments IV*, 243 F.R.D. at 348 & 349. The court also held that it was for the court to determine the shares for which each sanctioned entity might ultimately be held responsible. *Id.* at 349. Rivard now urges the court to refrain from making an apportionment determination to avoid placing Rivard and its attorneys in adverse positions as to any issue. There is some merit to Rivard's contention. The court believes that Rivard's concerns can be obviated, while the court's concern that each of the sanctioned entities be required to bear an appropriate share of the sanction can be satisfied, if the court permits the sanctioned entities to determine among themselves, perhaps only after this litigation is concluded, how the sum is apportioned, subject to the following conditions: (1) the entire sum of the sanctions must be paid within 60 days of the date of this order; (2) the sanctioned entities must each ultimately be apportioned a share of the sanctions; and (3) local counsel's share must not be less than 10% of the total amount of the sanctions.

### III. CONCLUSION

The task of determining the amount of sanctions to be imposed in this case has been nearly as odious to the court as the necessity of determining whether or not sanctions should be imposed at all. *See Ideal Instruments IV*, 243 F.R.D. at 349 (noting that the court "cannot express its disappointment that it has been necessary to impose sanctions upon any party or attorney appearing before it"). Nevertheless, the court will impose as a sanction against Rivard and its attorneys the amount of Ideal's attorney fees and expenses in litigating the improvident Motion For Preliminary Injunction that the court finds is "sufficient to deter repetition of such conduct or comparable conduct by others similarly

23

situated." FED. R. CIV. P. 11(c)(2); *Kirk Capital Corp.*, 16 F.3d at 1490 ("[T]he primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending" against the frivolous action.).

THEREFORE, Ideal's August 9, 2007, Petition For Attorney Fees And Expenses Related To Motion For Preliminary Injunction (docket no. 217) is **granted** to the extent that

1. The court awards Ideal **$50,000 in attorney fees** to be paid by Rivard Instruments and its attorneys, jointly, as the fee component of the Rule 11 sanction in this case;

2. The court awards **$12,937.56 in expenses**, likewise to be paid by Rivard Instruments and its attorneys, jointly, as the expenses component of the Rule 11 sanction in this case;

3. Rivard Instruments and its attorneys shall be allowed to apportion this total sum by agreement, even after conclusion of this litigation, subject to the following conditions: (a) the entire sum of the sanctions must be paid within 60 days of the date of this order; (b) the sanctioned entities must each ultimately be apportioned a share of the sanctions; and (c) local counsel's share must not be less than 10% of the total amount of the sanctions.

**IT IS SO ORDERED.**

**DATED** this 19th day of September, 2007.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

24